NEW YORK CENTRAL RAILROAD COMPANY *v.* YARIAN.

[No. 27,650. Filed February 19, 1942.]

478

*Howard L. Townsend* and *Edwin R. Thomas,* both of Fort Wayne, *Walter D. Stump,* of Auburn (*S. C. Murray, of* Chicago, Illinois, of counsel), for appellant.

*Mountz & Mountz,* of Garrett, and *C. E. McClintock,* of Auburn, for appellee.

FANSLER, J.—The appellee's remote grantor conveyed to the appellant's remote grantor a strip of ground through his farm land in fee simple, which was intended to be, and since has been, used as the right of way of a railroad. The original conveyance contained this provision: "Said company to permit & maintain two farm crossings . . . ." The land granted to the railroad company divided the grantors' land, and then separated, and now separates, that part of the land upon which the buildings are located from the only accessible public highway. The land was then used, and is now used, for farming, and part of the buildings as a home and residence.

The adjacent City of Auburn maintains an electric utility, and at the request of the appellee it brought a

line carrying electrical current of 220 volts or less up to the railroad's right of way opposite appellee's house. The appellee caused an iron pipe to be placed under appellant's tracks, about one inch below the lower edge of the ties, and brought cables leading from the utility poles through the railroad right of way, burying the cables under six or eight inches of dirt, to the ends of the pipe and passing the cables through the pipe under the railroad tracks.

The appellant brought this action seeking to have the condition created by appellee declared a dangerous nuisance, and for a judgment requiring appellee to remove the structure from the right of way. There was judgment for the defendant appellee, and the appellant appeals, assigning as error the overruling of a motion for a new trial.

It appears from the evidence that before installing the cables the appellee discussed the matter with representatives of the appellant; that appellant was willing to permit the installation in consideration of a nominal fee and an agreement to remove it upon thirty days' notice. It seems also to have been suggested that the manner of installation was dangerous; that it was not sufficiently buried in the ground to avoid injury to the conduit and the dangerous escape of electricity. The appellee indicated a willingness to make changes in the installation if it was not according to proper engineering standards. The electric line was intended solely for farm and domestic use upon the appellee's property. It appears that the farm crossing is at an angle, and that the wires are brought straight across so that they do not lie within the boundaries of the strip used for the crossing, but the variance is insubstantial and is not stressed by the appellant.

The appellant contends that the easement for a farm crossing reserved by appellee's remote grantor is not sufficiently broad to permit the installation of the conduit carrying electricity for farm and domestic purposes, and cites as supporting its contention *United States Pipe Line Co. et al.* v. *Delaware, L. & W. R. Co.* (1898), 62 N. J. L. 254, 41 A. 759, 42 L. R. A. 572, and *Midland Valley R. Co.* v. *Jarvis et al.* (1928), 29 F. (2d) 539, 61 A. L. R. 1064. The first case involves the use of a reserved farm crossing for the installation of a commercial pipe line for carrying oil. The pipe line was not limited to the uses of the land served by the private crossing. The other case involves the right to drill oil wells on a railroad right of way, and we do not find it helpful.

When the appellee's remote grantor conveyed the land dividing his farm land and cutting part of it off from the only available highway, the law would have given a way of necessity for ingress and egress in the absence of a statute or reservation in the conveyance. *Cleveland, C. C. & St. L. R. Co.* v. *Smith* (1912), 177 Ind. 524, 97 N. E. 164. The conveyance was made in 1871. The reservation was for a "farm crossing," and it must be concluded that it was intended to afford a means of access to the divided portions of the farm and to the adjacent and only available highway. It is true that at the time the deed was made the crossing was only used as a pedestrian crossing or for animals or animal-drawn vehicles, but there is no express limitation of the use to such traffic. It is sometimes said that reservations of easements are strictly limited to the purposes in the minds of the parties, but we believe a proper application of the rule puts the limitation not upon the character of traffic upon a reserved way, but upon the purpose to be served by

the traffic. Without the reservation, public policy would have implied an intention that the dominant estate should have a way of passage over the servient estate because such a way is necessary to the full and fair enjoyment of the dominant estate, and it is against public policy that estates be cut off from use and profitable enjoyment. See *State ex rel. McNutt et al.* v. *Orcutt et al.* (1937), 211 Ind. 523, 199 N. E. 595, 7 N. E. (2d) 779, and cases cited. In Jones on Easements, § 323, p. 263, it is said: "The extent of a way of necessity is a way such as is required for the complete and beneficial use of the land to which such way is impliedly attached." It is true, as the author points out, that there is confusion in the authorities seeking to define the limits of the right, and it has sometimes been said that the right is limited to such a way as was necessary at the time. But we think the limitation is upon the use of the dominant estate served, in this instance a farm home, and that the way may be used in any manner that is reasonably required for the complete and beneficial use of the dominant estate as a farm or home. The rule is thus stated in Thompson on Real Property, Permanent Edition, Vol. 2, § 580, p. 188: "The purpose for which an easement is established is the test for determining the mode and extent of its user and when the easement arises from necessity it is generally considered coextensive with the reasonable need, present and future, of the dominant estate for such a right or easement, and to vary with the necessity, in so far as may be consistent with the full reasonable enjoyment of the servient tenement." In *Tong* v. *Feldman et al.* (1927), 152 Md. 398, 405, 136 A. 822, 824, 51 A. L. R. 1291, 1296, the court said: "The test to which the decisions hearken back is the purpose for which the right or easement has been established.

Whenever it has arisen from necessity, it would seem to be co-extensive with the reasonable needs present and future of the dominant estate for such a right or easement, and to vary with the necessity, in so far as may be consistent with the full reasonable enjoyment of the servient tenement." The use of the way, of course, must not unreasonably interfere with the use of the servient estate for any lawful purpose which does not deprive the dominant estate of a right of way.

At the time the railroad was built the crossing was no doubt limited in its use to passage of persons on foot and of cattle and farm vehicles, conveying back and forth the products of the farm and the materials and equipment incident to operating the farm. This might in a given case involve the conveyance of water by vehicle from a well separated from the buildings by the servient estate. The conveyance of water by pump through a pipe conduit underneath the railroad's right of way would operate to accomplish the same purpose as hauling water by cart for farm use, and if the pipe is installed in such a manner as not to interfere with the reasonable operation of the railroad it cannot be seen that the owner of the fee in the railroad right of way is injured in any way, or that the use of the fee is interfered with in any respect not contemplated in the original grant. In other words, no additional burden is cast upon the fee. We find support for this view in the construction put upon easements acquired by eminent domain for public highways. At the time easements for our early highways were condemned, the way was used for the passage of foot passengers, animals, and animal-drawn conveyances only, and yet, as gas for fuel, telephones, and electricity came into use, the easements were construed as intended to be broad enough to permit the laying of pipes and the installation

of poles and wires in, upon, and under the streets and highways, and it was concluded that such a use cast no burden upon the fee beyond that which was contemplated and paid for in the original taking.

We find no basis for a different rule for private ways where the instrumentalities serve the dominant estate only, and where the dominant estate is being used for purposes within the contemplation of the parties at the time the way was granted or reserved.

The same public policy which requires that a way of necessity will be implied where none is expressly reserved, requires that an express reservation of a way shall be construed to grant rights sufficient for the full reasonable enjoyment of the estate if the language of the reservation will permit such a construction.

Electricity is largely used for power and light and for the operation of refrigerating and labor-saving machines on farms and in farm homes, and that its use contributes to the full and profitable enjoyment of a farm can hardly be doubted.

It must be concluded that the reservation of a farm crossing is broad enough to permit the bringing in of the conduit underground for the purpose of supplying electricity.

While the appellant contended vigorously below and here that the appellee had no right to cross under the right of way, yet from the beginning it expressed a willingness to grant a license for the maintenance of the structure upon reasonable terms, conditioned that the installation should conform to requirements laid down by the appellant, and designed to protect against danger from escaping electricity. The appellant's principal complaint is that the conduit as installed is dangerous to persons and property. The

appellee in one of his pleadings expressed a willingness to change the structure to conform to safe practice if it was thought to be dangerous. The appellant brought forward several witnesses familiar with the operation of railroads, who testified that as the wires and conduit are now laid they are dangerous, and persuasive reasons were suggested to sustain their opinions. There is no evidence to the contrary in the record. We find no statutory standards for this type of construction, but it seems clear from the evidence that with some changes, consisting principally in lowering the pipe conduit, the dangers complained of can be eliminated. Since the appellee has expressed a willingness to conform to any reasonable standards for the sake of safety, there should be no great difficulty in arriving at an amicable solution. The appellant suggests that at some future time the operation of its railroad may require a change in its tracks and equipment, perhaps a deepening of its installation. In such a case there could be no doubt that the appellee would be required to alter his installation so as not to interfere with the reasonable operation of the railroad.

There is a provision in the deed that the railroad shall maintain the crossing, and this has been done by attaching planks adjacent to the rails so as to make the crossing reasonably safe for vehicles, but this does not mean that the railroad must maintain the conduit and the cable transporting the electricity, since this structure must be considered more in the nature of a vehicle.

For failure to enjoin the continuance of the electric line as now maintained as a nuisance, the judgment is reversed, with instructions to the trial court to ascertain what changes in construction of the line are required to avoid the dangers of which the appellant

complains, and this may be arrived at by agreement of the parties; and to issue a mandatory injunction against the defendant requiring him to change the installation to conform to the standards found necessary by the court for safety, or, in the alternative, to remove the wires.

NOTE.—Reported in 39 N. E. (2d) 604, 139 A. L. R. 455.