**Clara B. LARABEE, William N. Larabee, and S. Joan Smock, Appellants (Defendants Below),**

v.

**Lonnie L. BOOTH, and Jean S. Booth, Appellees (Plaintiffs Below).**

**No. 4–383A97.**

Court of Appeals of Indiana,
Fourth District.

May 14, 1984.

John D. Gay, Gay & McCombs, Versailles, for appellants.

Gary Sorge, Lehner & Sorge, Lawrenceburg, John T. Lorenz, Kightlinger Young Gray & Detrude, Indianapolis, for appellees.

YOUNG, Judge.

Lonnie L. and Jean S. Booth filed suit against Clara B. and William N. Larabee and S. Joan Smock (hereinafter collectively "the Larabees") seeking specific performance of an agreement to convey land. The court found for the Booths and ordered specific performance. The Larabees appeal.

We affirm.

The relevant facts are as follows. In 1971, Clara Larabee owned a farm in Dearborn County, subject to a life estate in her mother. At this time, the Larabees and Booths were good friends, and the Booths visited the farm several times. In the autumn of 1971, the parties discussed the possibility of the Booths building a summer cottage on the Larabees' farm. The parties reached an agreement, and construction began in the spring of 1972. Soon thereafter, the Booths asked if they could build a permanent home there, and Clara agreed. In September 1972, the Larabees executed an "Agreement to Convey Land," which read as follows:

We, Clara B. Larabee and Willian N. Larabee, her husband, of Marion County, Indiana, hereby agree to CONVEY AND WARRANT to Lonnie L. Booth and Jean S. Booth, husband and wife, of Hamilton County, Ohio, the following described parcel of land on our farm located in Dearborn County, Indiana (formerly owned by Joseph Block and Sophie Block) at the time that we acquire a fee simple title and at the expiration of the outstanding life estate in such land. The parcel to be conveyed is approximately bounded as follows:

Beginning at a point on the edge of the hollow on the eastern side of the Booth House; thence along the water line of the proposed lake to a point midway between the Booth home and the proposed home to be built by me; thence south, along this line to the site of the old garden fence; thence easterly, along the fence line, to the edge of the hollow on the eastern side of the house; thence northerly, to the point of beginning at the water line.

This land is to be conveyed for no consideration from Lonnie L. Booth and Jean S. Booth. I hereby renounce any and all interest in the home the Booths are now building on this land at the present time and it is to be treated as if this conveyance were already made.

IN WITNESS WHEREOF, we have hereunto set our hands and seals this 14th day of September, 1972.

Lonnie Booth testified that, even prior to this agreement, the parties had understood that the Booths would receive a deed to the property when the house was completed and the life estate of Mrs. Larabee's mother expired.

When the house was completed, however, and the life tenant had died, the Larabees refused to give the Booths a deed to the property. The present litigation ensued. The trial court originally found the Larabees had made a gift of the property. This court reversed that finding, however, and remanded the case for further proceedings. *Larabee v. Booth,* (1982) Ind.App., 437 N.E.2d 1010, *on rehearing* 440 N.E.2d 489. On remand, the trial court again entered judgment for the Booths, finding that

the Larabees had made a binding contract to convey the land.

In challenging this judgment, the Larabees raise several issues:[1]

1. Whether there was sufficient evidence to prove a binding contract existed;
2. Whether the statute of frauds precluded enforcement of this contract;
3. Whether the Booths' repudiation of the contract precluded its enforcement;
4. Whether the contract's terms were too vague to support an order of specific performance; and
5. Whether the court erred in granting the Booths an easement over a driveway across the Larabees' property.

### I.

■ The Larabees first contend the Booths failed to prove the existence of a binding contract, since there was no consideration for the Booths' promise to convey and since there was no formal offer and acceptance. We disagree. This issue is settled by the doctrine of promissory estoppel, which has been summarized as follows:

A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise.

*Eby v. York-Division, Borg-Warner*, (1983) Ind.App., 455 N.E.2d 623, 627; *Lyon Metal Products, Inc. v. Hagerman Construction Corp.*, (1979) 181 Ind.App. 336, 391 N.E.2d 1152; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 90 (West 1981). Although Indiana cases applying this doctrine have dealt with promises of employment, *Eby, supra*, and construction bidding, *Lyon Metal Products, supra*, the rule clearly applies to gratuitous promises to convey land. *See Chapman v. Bomann*, (1978) Me., 381 A.2d 1123 (gratuitous promise to sign land sale contract enforced).

■ To establish a contract based on promissory estoppel, the Booths were required to prove three elements: (1) that the Larabees made a promise which they should reasonably have expected to induce the Booths to act, (2) that this promise induced the Booths to take action of a substantial character, and (3) that injustice could only be avoided by enforcing the promise. *See Eby, supra*, at 627. In determining whether the Booths met this burden of proof, we examine all the evidence in the light most favorable to the court's decision. We will affirm if there is substantial evidence to establish every element of the Booths' claim. *Display Fixtures Co. v. R.L. Hatcher, Inc.*, (1982) Ind.App., 438 N.E.2d 26; *Royer v. Pryor*, (1981) Ind. App., 427 N.E.2d 1112.

■ The evidence here shows that in 1971 the parties discussed the possibility of the Booths building a house on the Larabees' property. The parties reached an agreement, and the Booths began construction in the spring of 1972. In September 1972, while construction was still in progress, the Larabees executed the written "Agreement to Convey Land," in which the Larabees promised to convey to the Booths, for no consideration, the parcel of land on which the Booths were building their house. Lonnie Booth testified that, even before this agreement was executed, the parties had understood that the Booths would receive a deed when they finished the house. Thus, speaking of the written "Agreement to Convey," Booth said:

Oh, really it was kindly [sic] immaterial, I thought. I didn't ask them for the paper, they made it up and gave it to me. My understanding was that just like the paper said .... that Clara would give us a deed to the property. There was never any problem, I mean I took Joan and Clara's word.

From this testimony, the court was entitled to infer that the "Agreement to Convey"

1. The Larabees raise a sixth issue as to whether "the Court has found a contract between the parties without sufficient evidence, has reformed the contract, and then ordered specific performance of the reformed contract, all of which is contrary to law." This issue is merely a rehash of the other issues listed above; thus, we will not discuss it separately.

merely restated the parties' previous understanding. Thus, there was substantial evidence that, before the Booths began construction, the Larabees agreed to convey the disputed parcel to the Booths. Further, in light of the parties' friendship at the time of this promise, the court was justified in finding that the Larabees should reasonably have expected this promise to induce the Booths to act.

Moreover, the evidence clearly shows that the Larabees' promise did induce substantial action on the part of the Booths. The Booths spent two years and a great deal of money building a house on the Larabees' land, doing much of the work themselves. Lonnie Booth testified the finished house was worth $95,000. Also, Lonnie and his son cleared the weeds and bushes from the lot and constructed a pond. The Booths made this house their home. Under these circumstances, the trial court could properly find that injustice could be avoided only by enforcing the Larabees' promise to convey. The evidence was sufficient to prove a binding contract existed under the doctrine of promissory estoppel.

## II.

■ The Larabees next contend any contract between them and the Booths was too vague to satisfy the statute of frauds, Ind. Code 32–2–1–1 et seq. (1982), and thus was unenforceable. The Larabees, however, did not raise this defense in their answer as Ind.Rules of Procedure, Trial Rule 8(C) requires. Nor did they raise it at trial prior to their motion to correct errors. By so doing, the Larabees denied the Booths the opportunity to present evidence in opposition to this defense. Thus, we find the Larabees have waived this issue. *Dawson v. St. Vincent Hospital & Health Care Center,* (1981) Ind.App., 426 N.E.2d 1328, *overruled on other grounds, Siebert Oxidermo, Inc. v. Shields,* (1983) Ind., 446 N.E.2d 332.

## III.

■ The Larabees further argue that, because the Booths repudiated the parties'

contract, the court erred in enforcing it. They cite no pertinent authority on this point, however. This issue is therefore waived. A.R. 8.3(A)(7); *Board of Commissioners v. Nevitt,* (1983) Ind.App., 448 N.E.2d 333.

## IV.

■ Next, the Larabees claim the court erred in ordering specific performance of the contract because the property to be conveyed was not described with sufficient certainty. A contract to convey real estate generally may not be enforced by specific performance unless the evidence is such that the court may determine with reasonable certainty what property the promisor agreed to convey. *See Warner v. Marshall,* (1905) 166 Ind. 88, 75 N.E. 582; *Beerbower v. Garman,* (1947) 117 Ind.App. 667, 75 N.E.2d 556.

■ The parties here stipulated that, before this suit was filed, Clara Larabee hired a surveyor and asked him to survey the land that she had given to the Booths. From this stipulation, the court was entitled to find that the parcel Clara Larabee had surveyed was the property she had earlier promised to convey to the Booths. This survey yielded a very precise metes and bounds description of the parcel, on which the trial court based its order for specific performance. The boundaries of the property conveyed were established with sufficient certainty to justify the court's order of specific performance.

## V.

■ The Larabees further contend that the court erred in granting the Booths an easement twenty-five feet wide over a driveway on the Larabees' land, running from the Booths' parcel to a public road. The Larabees also challenge the court's order that the Booths and Larabees share equally the cost of maintaining this driveway. It is true, as the Larabees point out, that there was no evidence that they ever agreed to convey an easement to the

Booths. The evidence, however, clearly supports a finding that the Booths were entitled to an implied easement as a way of necessity over the Larabees' land. Generally, when a landowner severs his land in such a way that the part retained surrounds the part conveyed, leaving it no access to a public road, the conveyance will be presumed to include an easement across the land retained by the grantor, even though no such easement is expressly included in the deed. *Pyramid Coal Corp. v. Pratt*, (1951) 229 Ind. 648, 99 N.E.2d 427; *New York Central Railroad v. Yarian*, (1942) 219 Ind. 477, 39 N.E.2d 604; 25 Am.Jur.2d *Easements and Licenses* § 34 (1966).[2]

■ In this case, it is undisputed that the Larabees agreed to give the Booths a parcel of land completely surrounded by the Larabees' farm. The Booths can reach the nearby public road only by using the driveway across the Larabees' property, which the parties have shared ever since they took up residence there. Under these facts, the Booths were clearly entitled to continue using the driveway over the Larabees' property as a way of necessity. *Pyramid Coal Corp. v. Pratt, supra; New York Central Railroad v. Yarian, supra.*

■ Having determined that the Booths were entitled to an easement, the court properly specified that this easement should be twenty-five feet in width. A way of necessity must be of the size and extent "required for the complete and beneficial use of the land to which [it] is impliedly attached." *New York Central Railroad, supra,* at 483, 39 N.E.2d at 606. There was evidence that this driveway was to be shared by the parties and that the Larabees used their land for farming. On these facts, and absent evidence to the contrary,

the court could reasonably find that the easement would have to be twenty-five feet wide to permit the passage of vehicles. *See Jeffers v. Toschlog,* (1978) 178 Ind.App. 603, 383 N.E.2d 457.

■ Finally, in light of undisputed evidence that both the Larabees and the Booths used this driveway, the court did not err in ordering the parties to share equally the cost of maintaining it. It is true that the owner of an easement must generally bear the entire cost of maintaining it, absent an express agreement to the contrary. *Lynch v. Keck,* (1970) 147 Ind. App. 570, 263 N.E.2d 176. When the dominant tenant and the servient tenant both use an easement, however, the court may apportion the cost of repairs between them accordingly. *Id.; see Bina v. Bina,* (1931) 213 Iowa 432, 239 N.W. 68; *Lindhorst v. Wright,* (1980) Okl.App., 616 P.2d 450. Thus, the trial court did not err in ruling the Booths were entitled to an easement over the Larabees' driveway or in ordering the parties to share the expense of maintaining it.

■ Finally, the Booths ask us to assess damages against the Larabees pursuant to A.R. 15(G). We will only assess such damages, however, against an appellant who in bad faith maintains a wholly frivolous appeal. *Blue Valley Turf Farms, Inc. v. Realestate Marketing & Development, Inc.,* (1981) Ind.App., 424 N.E.2d 1088. We find that the requisite bad faith has not been shown in this case. The Booths' request for damages is denied.

The trial court's judgment is affirmed.

CONOVER, P.J., and MILLER, J., concur.

---

2. Some cases state that an implied easement will be found only "when the owner of an estate imposes an obvious and permanent servitude on one part in favor of another part, and at the time ownership is severed the servitude is in use and reasonably necessary for the fair enjoyment of the part benefited....." *Searcy v. LaGrotte,* (1978) 175 Ind.App. 498, 502, 372 N.E.2d 755, 757; *see John Hancock Mutual Insurance Co. v.*

*Patterson,* (1885) 103 Ind. 582, 2 N.E. 188. These cases, however, do not pertain to easements implied as a way of necessity. Rather, these cases deal with easements implied from pre-existing use—a distinct legal theory. *See* 25 Am.Jur.2d *Easements and Licenses* § 27. Thus the rules established in cases such as *Searcy* and *Patterson, supra,* have no application to this case.