WENDY'S OF FORT WAYNE,
INC, an Ohio Corporation,
Appellant–Defendant,

v.

William P. FAGAN, Appellee–Plaintiff.

No. 02A04–9405–CV–191.

Court of Appeals of Indiana,
First District.

Dec. 12, 1994.

Daniel E. Brophy, Fort Wayne, for appellant.

Max A. Myers, Fort Wayne, for appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Wendy's of Fort Wayne, Inc. (Wendy's) contests the trial court's adverse ruling in a declaratory judgment suit which granted appellee-plaintiff William P. Fagan the right to install utilities and a sign within an easement granted by Wendy's to Fagan.

### FACTS

Fagan is the owner of a triangular shaped property that is bounded on the eastern and southern sides by property owned by Wendy's in Allen County, Indiana. The western side of the property is the south right of way of U.S. Highway 24, onto which there is no access from Fagan's property. *See* Diagram.* At the time of this suit, Fagan was building an automotive service center on his property.

When Wendy's submitted a plan for developing a restaurant on its property south of

\* [Editor's Note: Diagram follows text of opinion.]

Fagan's tract, the Allen County Plan Commission (Commission) required Wendy's to give Fagan an easement across its property to provide access from Liberty Mills Road Extended to Fagan's property. The easement was intended to be for the joint use of Wendy's and Fagan's employees, customers, and suppliers. Pursuant to the Commission's requirements, Wendy's executed an easement which provides in pertinent part:

> Wendy's ... does hereby grant to William P. Fagan ... a permanent easement and right-of-way for the purpose of ingress and egress from the real estate.

> The Easement shall be for the non-exclusive use and benefit of [Fagan], and [Wendy's] reserves the right of use of the real estate contained within the Easement not inconsistent with this grant and for purposes of ingress and egress from any part of or all of the land owned by the [Wendy's] abutting or adjoining the Easement.

> The Easement shall include the right in [Fagan], its successors and assigns forever, to enter upon and within the Easement; to maintain and repair any roadway, street or drive constructed over and along the Easement; and to do all things necessary in regards thereto.

Record at 241.

Fagan sought to install electricity, gas, water and telephone utilities in the easement for the construction and operation of his automotive service center. He also proposed to erect a 52 inch electrified sign in the unpaved portion of the easement near its intersection with Liberty Mills Road Extended to direct customers and suppliers to his facility. Wendy's denied the local utility approval to proceed and denied that Fagan had a right to erect the proposed sign. Fagan filed suit against Wendy's seeking a preliminary and permanent injunction against interference by Wendy's and a declaratory judgment to determine whether he had a right to install utilities and erect the proposed sign in the easement.

On January 6, 1994, a hearing was held at which the trial judge denied Fagan's request

for an injunction and asked the parties to submit briefs on the declaratory judgment issue regarding the scope of the easement. On January 21, 1994, Fagan filed a verified supplemental complaint and on January 24, 1994, a request for summary ruling on the declaratory judgment because construction of his service center was far behind schedule. On February 14, 1994, the trial court determined that the interpretation of the scope of the easement presented a question of law. The court then entered a declaratory judgment holding that Fagan had a right to install utilities and a 52 inch electrified directional sign because these rights were necessary to the complete and beneficial use of the real estate for a retail establishment. The court also denied Wendy's offer of proof concerning the intent of the parties and alternative routes for the installation of utilities and a sign.

Wendy's appeals the trial court's declaratory judgment raising the following issue which we restate as whether the trial court incorrectly interpreted the grant of easement to include an unlimited right to install utilities as well as a right to erect the proposed sign.[1]

## DISCUSSION AND DECISION

### I.  Interpretation

Pursuant to the Uniform Declaratory Judgments Act, declaratory orders, judgments and decrees have the force and effect of final judgments and may be reviewed as other orders, judgments and decrees. IND. CODE § 34–4–10–7. Wendy's has presented us with a question of contract interpretation. *See Bratton v. Yerga* (1992), Ind.App., 588 N.E.2d 550, 554. Since Wendy's drafted the instrument creating the easement and Fagan had no part in its preparation, Fagan is entitled to the benefit of any doubt in the construction of the language of the easement. *See Indiana Broadcasting Corp. v. Star Stations* (1979), 180 Ind.App. 207, 214, 388

N.E.2d 568, 573, (rule of construction of easement grant in case of doubt or uncertainty will ordinarily be construed in favor of grantee).

When considering contracts, we endeavor to give words their plain and usual meaning, unless from the entire contract and subject matter thereof, it is clear that some other meaning is intended. *Bratton,* 588 N.E.2d at 554, (citing *Tomahawk Village Apartments v. Farren* (1991), Ind.App., 571 N.E.2d 1286, 1291). Particular words and phrases of a contract cannot be read alone, the parties' intention must be gleaned from the contract considered as a whole. *Id.* Parol or extrinsic evidence is inadmissible to explain a written instrument unless there is a showing of fraud, mistake, illegality, duress, undue influence, or ambiguity. *Id.* at 555.

In the present case, both parties concede that the grant was unambiguous.[2] Thus, it is to be interpreted as a matter of law from the plain and ordinary meaning of the language of the grant. *Tomahawk,* 571 N.E.2d at 1291, (if terms of grant are clear, its meaning is a question of law). The language of the grant establishes an easement for the purpose of "ingress and egress" to Fagan's property.

Initially, we note *New York Cent. R. Co. v. Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604. In 1871, Yarian's predecessor in title conveyed to the railroad company's predecessor in title a strip of ground through his farmland which was intended to be used as a right of way for a railroad. The original conveyance contained the reservation, "Said company to permit and maintain two farm crossings ..." *Id.* at 480, 39 N.E.2d at 605. The supreme court concluded that the reservation for a farm crossing was intended to afford a means of access to the divided portions of the farms and to the adjacent and only available highway. Further, the court noted that at the time the deed was made the crossing was

---

1.  Oral argument was held in this case on November 17, 1994.

2.  Wendy's contends that the trial court erred by not allowing Wendy's to offer proof of the parties' intent. We remind Wendy's that it conceded that the grant of easement was unambiguous. Thus, extrinsic evidence was inadmissible to explain the intent of the parties and the trial court was compelled to deny Wendy's offer of proof. *L. & G. Realty & Constr. Co. v. City of Indianapolis* (1957), 127 Ind.App. 315, 322–23, 139 N.E.2d 580, 585.

only used as a pedestrian crossing or for animals or animal-drawn vehicles, but there was no express limitation of the use to such traffic. Ultimately, the court held that the reservation of a farm crossing is broad enough to permit the installation of underground water pipes and a conduit for the purpose of supplying electricity. The court reasoned that this would not cast any additional burden on the fee because the conveyance of water by pump through a pipe underneath the right of way would operate to accomplish the same purpose as hauling water by cart for the farm's use.

Wendy's asserts that the trial court misapplied *Yarian* because it involved an implied easement of necessity which Fagan specifically informed the court he was not seeking. Thus, Wendy's argues that the trial court incorrectly applied the standard for an implied easement of necessity to the present case which involved an express easement. That standard, as explained by the *Yarian* court, is, "The extent of a way of necessity is a way such as is required for the complete and beneficial use of the land to which such way is impliedly attached." *Id.* at 483, 39 N.E.2d at 606.

■ First, we note that *Yarian* was not limited to only implied easements of necessity. The supreme court, after stating the standard for an implied easement of necessity, proceeded to extend the public policy behind implied easements of necessity to express easements. The court held that, "the same public policy which requires that a way of necessity will be implied where none is expressly reserved, requires that an express reservation of a way shall be construed to grant rights sufficient for the full reasonable enjoyment of the estate if the language of the reservation will permit such a construction." *Id.* at 485, 39 N.E.2d at 607. Thus, *Yarian* applies to express easements and holds that if the language of the grant is sufficiently broad, then the express reservation shall be interpreted to grant all rights that are reasonable for the full enjoyment of the dominant estate. Although the present case involves an express grant of easement, *Yarian* is distinguishable because it involved a broad unlimited grant of easement, and here the easement is limited by the terms ingress and egress.

■ In *Hagemeier v. Indiana & Michigan Elec. Co* (1983), Ind.App., 457 N.E.2d 590, 594, this court held that the right of ingress and egress involves the right to pass over a party's land rather than the more extensive right to at least partially control and alter it. Further, the terms ingress, egress, and regress are defined as expressing the right to enter, go upon, and return from the lands in question. Black's Law Dictionary 703 (5th ed. 1979). Wendy's asserts that the plain meaning of the rights of ingress and egress merely allows Fagan to enter upon and cross its property in order to reach his real estate; it does not include an unlimited right for him to install utilities and a sign.

■ We agree with Wendy's contention that Fagan's right of ingress and egress is a restricted right and does not grant him an unlimited right to install utilities in the easement. *Accord Fleming v. Napili Kai, Ltd.* (1967), 50 Haw. 66, 430 P.2d 316, 318 (court held that since grant did not state that the roadways were for the purposes of ingress and egress only, the easement was without limitation or restriction). The installation of utilities is not necessary to effectuate the purpose of the grant of easement which was to allow Fagan, his employees, customers, and suppliers the ability to cross over Wendy's property in order to arrive at Fagan's business. In other words, the grant was limited to providing Fagan with direct access to and from a public highway.

We realize that in today's society electricity, telephones, gas, and water are considered fundamental necessities. It would be absurd to expect the owner of a commercial business to operate it without these utilities. However, in the present action, the easement is limited by the ingress and egress language which only provides for crossing over the land and not for altering the land by the installation of various utility poles, pipes, and lines. Had Wendy's intended to give Fagan

the right to install utilities in the easement it could have done so.[3]

Moreover, we note that in 1942, the *Yarian* court held that the words "farm crossing" included the right to install public utilities even though it was unlikely that the concept of public utilities was even contemplated by *Yarian*'s remote grantor in 1871 when the easement was reserved in the deed given to the railroad. Here, in contrast, the grant was made in 1993, a time when electricity, gas, water and phones were not just contemplated but considered necessary. Thus, although Wendy's could have conceived at the time of the grant that Fagan's business would require the use of various utilities, it did not provide Fagan with the right to install them. Instead, Wendy's granted Fagan the right of ingress and egress which, we conclude, is a phrase limiting Fagan's use of the easement to crossing over and from his tract.

█ In regard to the proposed 52 inch electrified sign, we find that Fagan does have the right to erect the directional sign in the easement because that use is incidental to making the grant of ingress and egress effectual.[4] Indiana cases clearly have held that the owner of an easement possesses all rights necessarily incident to the enjoyment of the easement and that he may make such repairs, improvements, or alterations as are reasonably necessary to make the grant of easement effectual. *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366, 369. Here, the road on the easement is the only en-

trance to Fagan's property and business which is located approximately 261 feet from Liberty Mills Road Extended, the only public street. A sign directing customers and suppliers to that road is necessary to fulfill the easement's purpose of providing ingress and egress to Fagan's business. If customers cannot find the road, they obviously will not be able to use it to go to and from Fagan's automotive service center. Thus, the purpose of the easement which is to provide Fagan's employees, customers, suppliers, and others access to his property, would be rendered virtually meaningless without the installation of a directional sign.

Furthermore, the proposed electrical sign is a mere 52 inches. The trial court in approving the installation of the proposed sign in the easement has determined that this type of sign is reasonable to effectuate the purpose of ingress and egress while not amounting to an offensive burden on the servient estate. Thus, we affirm the trial court's decision authorizing Fagan to erect the proposed sign and we reverse the judgment determining that Fagan has an unlimited right to install utilities in the easement. Rather, we hold that Fagan has a limited right to install electricity lines in the easement for the sole purpose of illuminating the sign.

Judgment affirmed in part and reversed in part.

ROBERTSON and NAJAM, JJ., concur.

We find that the trial court did not abuse its discretion by excluding the proffered evidence because it was not relevant. The only issue before the court was whether Fagan had a right to install utilities and erect a sign. Thus, the evidence that Wendy's was offering regarding alternative locations for the sign was not relevant to whether Fagan had the *right* to erect the sign in the easement.

---

3. Wendy's also claims that the trial court erred in not allowing it to offer proof of alternative routes for the installation of utilities. Because we hold that Fagan had no right to install utilities in the easement, we need not reach this issue.

4. Wendy's asserts that the trial court erred by not allowing it to offer proof of alternative locations, not within the easement, for erecting the sign.