Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2014, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**MATTHEW R. LEMME**
Lemme Law Offices, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL L. CARMIN**
**GREGORY A. BULLMAN**
Carmin Parker, PC
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHELLE BARNES and RAYMOND SURZYCKI, | ) ) ) | |
| Apellants-Defendants, | ) ) | |
| vs. | ) ) | No. 53A01-1404-PL-178 |
| PRAIRIE HORSE FARMS, LLC, | ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable E. Michael Hoff, Judge
Cause No. 53C01-1306-PL-1082

**December 30, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Michelle Barnes ("Barnes") and Raymond Surzycki ("Surzycki") (collectively "the Defendants") appeal the order of the Monroe Circuit Court granting a permanent injunction in favor of Prairie Horse Farms, LLC ("Prairie Horse Farms") with regard to an easement on land owned by the Defendants in favor of land owned by Prairie Horse Farms. On appeal, the Defendants present five issues, which we renumber and restate as the following four:

I.   Whether the Defendants were denied due process when the trial court allegedly considered issues outside the request for injunctive relief and determined the scope of the rights granted under the easement;

II.  Whether certain of the trial court's findings of fact were clearly erroneous;

III. Whether the trial court erred in granting injunctive relief when Prairie Horse Farms had expressed only an intent to pasture horses in Lot 2; and

IV.  Whether the trial court erred in determining the scope of the area encompassed by the easement.

We affirm.

**Facts and Procedural History**

The Defendants own a parcel of land in Monroe County comprising approximately 2.41 acres. The property consists of a long east-west strip of land that is approximately fifty feet wide that connects the main portion of the property to a nearby road. To the east of the main portion of the land and to the north of the strip are two lots now owned by Prairie Horse Farms. The following map is provided for reference:[1]

---

[1] The map on the next page is based on an exhibit admitted at trial, which is too large to be faithfully reproduced in this opinion. We include this map for reference purposes only.

See Appellee's App. p. 1.



**Prairie Horse Farms Properties**

Residence

Lot 2

Lot 1

Knightridge Road

Barnes/Surzycki Property

Surzycki purchased the property in 2010 from Steven and Elizabeth Bray. The warranty deed Surzycki received noted that the property was subject to a "[g]rant of easement by and between Teddy Lee Deckard and Ralph L. Deckard and Vera Evelyn Deckard, recorded September 21, 2005, as Instrument Number 2005019238, in the office of the Recorder of Monroe County, Indiana." Ex. Vol., Plaintiff's Ex. 1. This deed was recorded on November 1, 2010. Two days later, Surzycki transferred the property to himself and his wife, Barnes, by a quitclaim deed, which again noted that the property subject to the easement recorded in Instrument Number 2005019238.

The Grant of Easement recorded in this Instrument Number provides that the Surzycki property is the servient estate and that what is referred to as "Lot 2" on the map above is the dominant estate. Id., Ex. 3. The Grant of Easement also states, "The easement granted herein shall be for ingress and egress for vehicular and pedestrian

traffic and utilities for the use and benefit of the Dominant Estate." Id. Under the heading "Maintenance," the Grant of Easement provides:

> Grantee and Grantor, and their successors in interest shall jointly be responsible for reasonable maintenance and upkeep of the easement area. In the event any construction work, repairs or maintenance are performed within the easement area, said easement area shall be returned to the same condition as existed prior to such construction work, repairs or maintenance at the expense of the party causing the work or maintenance to be performed. Grantee's real estate, the Dominant Estate, shall be required to contribute to the maintenance in accordance with this paragraph only after a residential structure is placed on the Dominant Estate. As long as the Dominant Estate remains unimproved without a residential structure, the maintenance of the easement area shall be solely the responsibility of the owner of the Servient Estate.

Id. The Grant of Easement provided also that "[t]his easement shall be perpetual and shall be appurtenant to the Dominant Estate and shall run with the land. The obligations of Grantee as stated herein for maintenance shall pass to and are binding on subsequent owners of the Dominant Estate." Id. The Grant of Easement provides that the Easement Area is defined by an attached Exhibit C, which consists of a diagram of the servient estate but does not include a description of the Easement Area by metes and bounds. The final plat of the subdivision, however, describes the Easement Area by metes and bounds as including the entirety of what is now the Defendant's property.

Prairie Horse Farms purchased Lot 2 from the Decker's in May 2011 and Lot 1 in April 2012. Lot 2 is a pasture with a horse barn with a feed room and tack room. For over forty years, Lot 2 had been used as a horse pasture by the prior owners. Prairie Horse Farms desired to use Lot 2 for similar purposes and began to improve the barn, cut back some of the woods that had overgrown on the Lot, and planned to install a

4

Lexington fence to replace the barbed-wire fence that had been in place. The plans to install the fence were delayed by actions of the Defendants. Specifically, the Defendants placed in the fifty-foot-wide strip area a line of fence-posts standing approximately six feet tall and dug holes for other fence posts. The Defendants also installed a geo-thermal heating and cooling system in the easement area, which left large mounds of dirt. The Defendants also placed their trash bins at the entrance of the drive, blocking Prairie Horse Farms from accessing the drive on the easement area. At one point, the Defendants and members of their family stood in the easement area in order to block the path of vehicles owned by the contractor hired by Prairie Horse Farms to improve Lot 2.

As a result of these actions, Prairie Horse Farms filed a verified complaint for permanent injunctive relief and a preliminary injunction on June 6, 2013. The trial court held an evidentiary hearing on the matter on February 24, 2014. At the conclusion of the hearing, the trial court took the matter under advisement, and both parties submitted proposed findings and conclusions. On March 27, 2014, the trial court entered findings of fact and conclusions of law, which provided in relevant part:

<u>Findings of Fact</u>

* * *

8. Lot 2 is primarily open pasture with a horse barn. The historic use of Lot 2 at the creation of the easement was to pasture and stable horses.

9. The pasture and horse barn were in existence at the time the Defendants acquired title to Defendant's real estate.

10. Plaintiff intends to continue the use of Lot 2 to pasture and stable horses.

11. The Easement provides pedestrian and vehicular access, including walking horses, from a public road to Lot 2.

12. Defendants have placed objects in the Easement Area, dug holes in the Easement Area approximately inches (8") in diameter and two and one half feet (2-1/2") deep intended for placement of fence posts in anticipation of a fenced garden located in the Easement Area, and have installed a geothermal loop in the ground of the Easement Area, but left the installation incomplete with a low area similar to a ditch and earth berms of excavated material. Defendants have also placed approximately forty (40) fence posts at eight foot (8') intervals two feet (2') off the north property line of the Easement Area. The fence posts begin near the southwest corner of Lot 2 and extend east through the Easement Area through the part of the Easement Area that has level ground.

13. The holes dug in the Easement Area present a danger to pedestrians and horses utilizing the Easement Area for access to Lot 2. The incomplete geothermal looping installation and berms obstruct vehicular passage through the Easement Area for access to Lot 2.

14. The objects placed in the Easement Area, the fence posts and the holes crated by Defendants obstruct Plaintiff's use of the Easement Area for ingress and egress to its real estate.

15. Plaintiff has stated its intent to install a fence along its south property line, being the same as the north property line of the Easement, to add farm gates in the fence suitable for use for vehicles pulling horse trailers and pedestrian gates suitable for use of Plaintiff's real estate for the passage of horses from Lot 2 through the Easement.

16. Plaintiff has stated its intent to make minor changes to or additions to the Easement Area to make it suitable for use for ingress and egress for pedestrians, vehicles and horses utilizing the easement for passage from the public road to Plaintiff's real estate.

17. The Easement, which benefits Plaintiff's real estate, Lot 2, appears to fully encumber all of Defendants' real estate, including that portion of Defendants' real estate which has been improved with a residential structure. However, Plaintiff has acknowledged that placement of gates in the fence line along the north of the Easement Area will not need to be closer to Defendants' residence than eighty feet (80") east of the southwest corner of Lot 2. Plaintiff's concession effectively removes the ingress/ egress easement rights from that portion of Defendants' real estate that contains Defendants' home, and for that portion of Defendants' real estate (the Easement Area) that is eighty feet (80") east of the southwest corner of Lot 2.

18. Installation of a fence by Defendants in the Easement Area two feet (2') off the north line of the property line of the Easement Area constitutes an obstruction to use of the Easement Area for access to Lot 2.

19. Plaintiff may gain access to Lot 2 using the eastern part of the Easement Area to pass from a public road through an eight foot (8') gate in a fence along the north line of the Easement Area into Lot 1 . . . passing through to Lot 2[.]

20. Defendants have placed trash receptacles on the driveway portion of the Easement Area at the east end of the Easement Area which obstructs Plaintiff's use of the east end of the Easement Area for passage to Lot 2 through the eight foot (8') gate and the fence line.

21. The several obstructions created by Defendants in the Easement Area, which interfere with Defendant's [sic] use of the Easement for access to Lot 2 are currently existing and continuing obstructions and interfere with Plaintiff's use of the Easement for Lot 2.

22. Defendants' interference with Plaintiff's use of the Easement for access to Lot [2] is intentional and unless restrained by Court Order will continue.

23. The cost to remove the obstructions created by Defendants to include removal of fence posts, filling holes created in the ground, filling the low areas, and grading the earth berms, is estimated to be One Thousand Five Hundred Dollars ($1,500).

## Conclusions

1. The Easement encumbers Defendants' real estate for the benefit of Plaintiff's real estate, Lot 2[.]

2. The owner of an easement possesses all rights that are necessarily incident to the enjoyment of the easement.

3. Prairie Horse Farms, LLC, Plaintiff, is the owner of the dominant estate and may make repairs, improvements or alterations to the Easement Area that are reasonably necessary to make the Grant of Easement effectual.

4. Defendants, as owners of the servient estate, retain the right to use their property in any manner and for any purpose consistent with the enjoyment of the Easement. Prairie Horse Farms . . . cannot interfere with Defendants' use of the real estate, so long as such use does not interfere with the easement rights owned by Prairie Horse Farms[.]

5. Defendants, as owners of the servient estate, have a duty to permit Prairie Horse Farms . . . , the owner of the dominant estate, to enjoy the easement rights without interference.

6. Where the conveyance of a right-of-way does not specifically define the right-of-way, the general rule is that the grantee, now Prairie Horse Farms . . . , is entitled to a way as is reasonably necessary and convenient for the purpose for which it was created.

7. Alterations in the Easement Area and the placement of objects within the Easement Area by Defendants constitute unreasonable obstruction and interference with the easement rights benefiting Lot 2:

a. Defendants' installation of a fence two feet (2') off the property line creates an unreasonable obstruction. A fence of the property line with appropriate gates with a second parallel fence two feet (2') away is an unreasonable interference with the use of the Easement for access to Lot 2.

b. Earth berms and incomplete fill areas creating low areas are unreasonable obstructions to vehicular use of the Easement.

c. Open holes dug in the Easement are an unreasonable risk of injury to pedestrians and animals using the Easement Area for access to Lot 2.

d. Placement of trash receptacles or other objects on the drive surface in the Easement Area unreasonably interferes with the use of the Easement for access to Lot 2.

8. Plaintiff's use of the Easement Area for ingress and egress to Lot 2, including:

a. walking and riding horses through the Easement Area for ingress and egress to Lot 2.

b. installing a property line fence with gates for vehicular passing and pedestrian access to Lot 2.

c. installing a bridle path with bark mulch or similar materials.

d. access to Lot 2 from the Easement through the existing gate along the north line of the Easement Area adjacent to Lot 1 . . .

are permitted uses of the ingress/egress Easement that are unreasonable obstructed by Defendants' alterations to the Easement Area.

9. Although Plaintiff has plans to install a fence along the common boundary between the Easement Area and plaintiff's real estate together with appropriate gates and pathway improvements, until such time as the gates and pathway improvements are installed and specifically located

within the Easement Area, the placement of objects, creating holes in the ground and placement of fence posts by Defendants in the Easement area are an unlawful interference with Plaintiff's easement rights and must be removed.

10. Plaintiff's easement rights appear to encompass the entire Easement Area as described in the Grant of Easement, but Plaintiff stated its willingness to restrict the use of the Easement Area for access by placement of any gates a distance from the residential structure. Plaintiff's commitment is consistent with the philosophy that "just because one can legally do something does not necessarily mean that one should." Upon completion of installation of the fence by Plaintiff, and the creation of gate locations, Defendants are entitled to place a gate in the Easement Area or make other use of the Easement Area that does not unreasonably interfere with Plaintiff's right of access to Lot 2 through the established gates or interfere with Plaintiffs pathway for horse and pedestrian access to Lot 2.

11. Defendants' obstructions of the Easement for access to Lot 2 are existing and continuing harms for which Plaintiff has no adequate remedy at law.

12. The harm to Plaintiff by the interference with access to Lot 2 outweighs the threat of harm to Defendants from the granting of injunctive relief. The public interest would be served by protecting and enforcing contractual rights including the Easement for access to Lot 2 and the public interest would not be dis[-]served by the granting of injunctive relief to Plaintiff.

ORDER

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that

A. Defendants Michelle Barnes and Raymond Surzycki, and any parties claiming under or through them, are permanently enjoined from interfering with the use of the Easement Area for ingress/egress to Lot 2[.]

B. Defendants are permanently enjoined from maintaining in the Easement Area any obstructions to Plaintiff's free and reasonable use of the Easement Area for ingress and egress to Lot 2, including removal of fence posts, fill in of holes in the ground, removal of earth berms, filling low areas in the ground created by Defendants and removal of fence posts and removal of trash receptacles and other objects placed in the Easement Area that interfere with use of the Easement for ingress/egress to Lot 2. Placement of trash receptacles in the Easement Area must be placed in an area that does not interfere with use of the Easement for ingress/egress;

C. Within twenty-one (21) days of this Order, Defendants shall:

a.   remove all fence posts installed by Defendants in the Easement Area starting at a point eighty feet (80') east of the southwest corner of Lot 2;

b.   fill all holes and ditches or low areas created in the Easement Area to restore the surface to level ground;

c.   remove the earth berms to restore to level ground; and

d.   relocate the trash receptacles to remove the interference with access through the Easement Area by use of the eight foot (8') gate in the fence along the north property line of the Easement Area;

D.   Defendants shall take such other reasonable steps as necessary to restore the level ground in the Easement Area that has been altered by the Defendants to include placement of additional soil in the filled areas as necessary after settlement of the fill to restore and maintain level ground;

E.   Upon failure of Defendants to complete the restoration work as ordered, Plaintiff may complete the restoration work and Defendants shall reimburse Plaintiff for the costs to complete the restoration work;

F.   Defendants are enjoined from interfering with Plaintiff's installation of a bridle path and mulch areas and the creation of horse walking paths in the Easement Area for access to Lot 2;

G.   Defendants are enjoined from interfering with Plaintiff's use of the Easement Area for ingress/egress though the existing eight foot (8') gate along the south line of Lot 1[.]

H.   Costs are assessed to Defendants.

Appellant's App. pp. 3-10 (citations omitted).  The Defendants now appeal.

## I.  Standard of Review

The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A).  We therefore apply a two-tiered standard of review: we first determine whether the evidence supports the trial court's findings, and second, we determine whether the trial court's findings support the judgment.  Anderson v. Ivy, 955 N.E.2d 795, 800 (Ind. Ct. App. 2011), trans. denied.  The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., if the record contains no facts or

10

inferences supporting them. Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Anderson, 955 N.E.2d at 800. The trial court's findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Id. In reviewing the trial court's findings, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Redd, 901 N.E.2d at 549. We do not, however, defer to the trial court's conclusions of law, which we review *de novo*. Anderson, 955 N.E.2d at 800; Redd, 901 N.E.2d at 549.

## II. The Law of Easements

Easements are limited to the purpose for which they are granted. McCauley v. Harris, 928 N.E.2d 309, 314-15 (Ind. Ct. App. 2010), trans. denied (citing Drees, 868 N.E.2d at 38). The owner of an easement, i.e., the owner of the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. Id. (citing Panhandle E. Pipe Line Co., v. Tishner, 699 N.E.2d 731, 739 (Ind. Ct. App. 1998). The dominant estate owner may make such repairs, improvements, or alterations as are reasonably necessary to make the grant of the easement effectual. Id. The owner of the property over which the easement passes, i.e., the servient estate, may use the property in any manner and for any purpose so long as such use is consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. Id. At the same time, however, all rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to

11

permit the dominant owner to enjoy his easement without interference. Id. The owner of the servient estate may not use his land to obstruct the easement or interfere with the enjoyment of the easement by the owner of the dominant estate. Id. Likewise, the owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. Id. (citing Klotz v. Horn, 558 N.E.2d 1096, 1100 (Ind. 1990)).

### III. Denial of Due Process

The Defendants first claim that they were denied due process when the trial court considered issues outside the request for injunctive relief and determined the scope of the rights granted under the easement. They argue that Prairie Horse Farms did not seek declaratory relief and that the trial court therefore erred in deciding issues that were not pleaded. We disagree. Prairie Horse Farms sought to enjoin the Defendants from interfering with the rights granted to Prairie Horse Farms under the easement. This necessarily required the trial court to determine what rights were granted to Prairie Horse Farms under the easement; otherwise, the trial court would have a difficult time in determining whether the Defendants' actions were interfering with Prairie Farm's easement rights and needed to be enjoined.

We find this case to be similar to that of McCauley v. Harris, 928 N.E.2d 309 (Ind. Ct. App. 2010). In McCauley, the owners of the dominant estate sought legal and injunctive relief to prevent the owners of the servient estate from interfering with the right of ingress and egress granted by the easement. In addressing this argument, both the trial court and this court were required to determine the scope of the rights granted

12

under the easement before determining whether the trial court properly granted the requested relief. See id. at 314-15.

Nor do we find persuasive the Defendants' claims that the trial court considered matters beyond the scope of the pleadings when it referred to Prairie Farm's ability to access Lot 2 via Lot 1. The Defendants claim that the trial court effectively created a new easement vis-à-vis the Defendants' property and Lot 1. Specifically, they take issue with three paragraphs of the trial court's order regarding the gate in Lot 1 that runs on the south side of Lot 1, which is also the northern boundary of the Easement Area. The trial court found that Prairie Horse Farms can access Lot 2 through Lot 1 via this gate. The trial court concluded that any interference with this access to Lot 2 through Lot 1 was improper. In that portion of the trial court's order granting injunctive relief, the court enjoined the Defendants from interfering with the use of this gate, but the trial court did not conclude that the easement benefitted Lot 1. It simply held that part of ingress and egress rights to Lot 2 was the right to access Lot 2 via the gate in Lot 1. The trial court did not conclude that the easement permitted the ingress and egress to Lot 1 by itself. It simply concluded that the Defendants could not interfere with ingress and egress to Lot 2 from the Easement Area via Lot 1. Since the trial court's order was directed at the access to Lot 2, which the Defendants admit is the dominant estate, we cannot say that the trial court's order in this regard is clearly erroneous.

### IV. Clearly Erroneous Findings of Fact

The Defendants also argue that the trial court entered findings of fact that were clearly erroneous. Specifically, they attack the court's findings that "Plaintiff intends to

13

*continue* the use of Lot 2 to pasture and stable horses" and that "The Easement provides pedestrian and vehicular access, *including walking horses*, form a public road to Lot 2." Appellant's App. p. 5 (emphasis added). In the Defendants' view, these findings are clearly erroneous because Michael Fitzgerald, one of the members of Prairie Horse Farms, testified that Prairie Horse Farms had not yet walked horses or pulled a horse trailer in the Easement Area and had yet to pasture horses in Lot 2. According to the Defendants, these findings regarding the *present* use of the Easement Area are clearly erroneous. We disagree.

When viewed in context, Fitzgerald's testimony support's the trial court findings. Fitzgerald testified that he had lived near Lot 2 for forty years, that Lot 2 had only been used as a horse pasture during those forty years until about seven or eight years ago, and that Lot 2 had therefore been used as a horse pasture when the easement was granted. He also testified that Prairie Horse Farms had immediate plans to repair the horse barn, install a new fence, and use Lot 2 as a horse pasture. In other words, Lot 2 had historically been used as a horse pasture, and Prairie Horse Farms was in the process of making improvements to Lot 2 to enable it to continue to be used as a horse pasture. Under these facts and circumstances, we cannot say that the trial court's findings were clearly erroneous with regard to the continued use of Lot 2 as a horse pasture.

To the extent that the Defendants' argument is one that the trial court erred in determining that the ingress and egress rights included in the easement did not include the ability to walk horses through the Easement Area, we also disagree. As noted above, Lot 2 had historically been used as a horse pasture and was used as a horse pasture at the time

14

the easement was created. Accordingly, when the easement granted to the dominant estate the right of "ingress and egress for *vehicular and pedestrian traffic* and utilities for the use and benefit of the Dominant Estate," we cannot say that this excludes horses.

We find support for this conclusion in New York Cent. R. Co. v. Arian, 219 Ind. 477, 39 N.E.2d 604 (1942). In that case, an easement was granted in 1871 for a farm-crossing easement across a strip of land used for railroad tracks. Years later, a controversy arose between the owner of the easement, who wanted the local municipal power utility to install electric power lines underneath the easement area, and the railroad company, who thought such installation was a dangerous nuisance. The owner of the dominant estate prevailed at trial, and the railroad appealed. On appeal, our supreme court noted that, at the time the farm crossing easement was granted, "the crossing was no doubt limited in its use to passage of persons on foot and of cattle and farm vehicles, conveying back and forth the products of the farm and the materials and equipment incident to operating the farm." Id. 484, 39 N.E.2d at 606. However, the court also noted that:

> [a]t the time easements for our early highways were condemned, the way was used for the passage of foot passengers, animals, and animal-drawn conveyances only, and yet, as gas for fuel, telephones, and electricity came into use, the easements were construed as intended to be broad enough to permit the laying of pipes and the installation of poles and wires, upon, and under the streets and highways, and it was concluded that such a use cast no burden upon the fee beyond that which was contemplated and paid for in the original taking.

Id. at 484-85, 39 N.E.2d at 606. The court therefore held that "the limitation is upon the use of the dominant estate served, in this instance a farm home, and that the way may be

15

used in any manner that is reasonably required for the complete and beneficial use of the dominant estate as a farm or home." Id. at 483, 39 N.E.2d at 606. Accordingly, the rights under the easement were held to be "broad enough to permit the bringing in of the conduit underground for the purpose of supplying electricity." Id. at 485, 39 N.E.2d at 607.

Here, the easement was granted at time when Lot 2 was used as a horse pasture. Prairie Horse Farms is making improvements to continue to use Lot 2 as a horse pasture. The walking of horses along the Easement Area is therefore reasonably required for the complete and beneficial use of the dominant estate as a horse pasture. See id. It is true that here, the easement is limited to ingress and egress. See Wendy's of Ft. Wayne, Inc. v. Fagan, 644 N.E.2d 159, 162 (Ind. Ct. App. 1994) (distinguishing Yarian on grounds that easement in Yarian was limited only to "farm crossing" as opposed to "ingress and egress"). However, we do not think that this is limited to motorized vehicles but also includes horses, especially since Lot 2 was used to pasture horses at the time the easement was granted. See Jeffers v. Toschlog, 178 Ind. App. 603, 608, 383 N.E.2d 457, 460 (1978) (holding that grant of easement in 1907 which granted right of ingress and egress for "teams and wagons" was created for the purpose of allowing passage of "vehicles" in general). Under the facts and circumstances presented here, we cannot say that the trial court erred in concluding that the ingress and egress rights granted under the easement included the walking of horses in the Easement Area.

16

## V. Propriety of Injunctive Relief

In a related argument, the Defendants claim that the trial court erred in granting a permanent injunction. The grant or denial of an injunction lies within the sound discretion of the trial court. Drees Co. v. Thompson, 868 N.E.2d 32, 41 (Ind. Ct. App. 2007), trans. denied. We will not overturn the trial court's decision unless it was arbitrary or amounted to an abuse of discretion. Id. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it, or if it misinterprets the law. Id. A trial court is to consider four factors in determining the propriety of permanent injunctive relief: (1) whether the plaintiff has succeeded on the merits; (2) whether plaintiff's remedies at law are adequate; (3) whether the threatened injury to the plaintiff outweighs the threatened harm a grant of relief would occasion upon the defendant; and (4) whether the public interest would be disserved by granting relief. Id.

Here, the Defendants argue that injunction relief was improper because Prairie Horse Farms had expressed merely an intent to pasture horses in Lot 2 and, according to the Defendants, "not yet taken any actions relating to horses or farming on Lot 2." Appellant's Br. p. 14. We find this argument unpersuasive.[2] Prairie Horse Farms had already taken steps to repair the horse barn on Lot 2. Also, the obstructions placed in the Easement Area by the Defendants have prevented Prairie Horse Farms from bringing in construction equipment to continue to improve Lot 2 for its intended use as a horse

---

[2] The Defendants also make a brief, unsupported argument that Prairie Horse Farms had an adequate remedy at law. Because they do not expound this argument further, we decline to address it.

pasture.  Indeed, Surzycki testified at the hearing that he installed the fence to "protect" his property and block Prairie Horse Farms from constructing a gravel drive to Lot 2.  Tr. p. 25.

It is clear that the actions of the Defendants were intended to prevent Prairie Horse Farms from using the Easement Area to access Lot 2.  They dug holes, erected fence posts, placed trash bins in the drive, and left mounds of earth in the Easement Area.  The trial court was well within its discretion to conclude that this constituted an interference with Prairie Horse Farms use and enjoyment of the easement that required injunctive relief.

## VI.  Extent of the Easement Area

The Defendants next claim that the trial court erred in determining the scope of the easement to include their entire property.  Specifically, they note Prairie Horse Farms' deed to Lot 2 states that the conveyance includes "a 50-foot Utility/Ingress/Egress Easement recorded under Instrument Number 200519238[.]"  Ex. Vol., Ex. 6.  The trial court, however, concluded that the Easement Area "appears to fully encumber all of Defendants' real estate, including that portion of Defendants' real estate which has been improved with a residential structure."  Appellant's App. p. 4.  This is in reference to the actual Grant of Easement document, which defines the Easement Area by reference to an attached "Exhibit C." This Exhibit C to the Grant of Easement is a diagram of the entirety of the Defendant's property:

Exhibit C



UTILITY AND INGRESS/EGRESS EASEMENT AREA

Appellant's App. p. 26.

The exhibit does not include an accompanying description of the Easement Area by metes and bounds. This diagram appears to show a separated, fifty-foot strip extending to the western edge of the Defendant's property, without including the remainder of their lot. However, in the final plat of the subdivision, the "Easement Area" is described in metes and bounds to include the entirety of the Defendant's property. Ex. Vol., Ex. 12. This is the reason for the trial court's findings regarding the scope of the Easement Area.

This does not mean that the Defendants are allowed to live in their home only at the whim of Prairie Horse Farms. As the owner of the dominant estate, Prairie Horse Farms could not interfere with the Defendant's use of their property unless such use

19

interfered with the purpose of the easement, i.e., ingress and egress to the nearby road. As that road lies east of Lot 2, Prairie Horse Farms has no need to use any portion of the Defendant's property which lies outside the fifty-foot strip area.

Moreover, the trial court noted that Prairie Horse Farms stated in open court that its use of the easement area would not be any closer than eighty feet to the east of the southwestern corner of Lot 2. The trial court construed this to be a limit on the easement that "effectively removes the ingress/egress easement rights from that portion of Defendants' real estate that contains Defendants' home, and for that portion of Defendants' real estate (the Easement Area) that is eighty feet (80") east of the southwest corner of Lot 2." Appellant's App. p. 4. The trial court's grant of injunctive relief was limited to this area. Accordingly, even if the trial court's description of the extent of the Easement Area was erroneous, such error does not affect the relief granted by the trial court.

**Conclusion**

The trial court did not deprive the Defendants of due process by considering the nature and scope of the easement before concluding that the acts of the Defendant interfered with Prairie Horse Farms' easement rights and enjoining the Defendants from interfering with these easement rights, nor did the trial court err in concluding that the easement rights included accessing Lot 2 through Lot 1 from the easement area. The trial court's findings of fact regarding Prairie Horse Farms' use of Lot 2 was not clearly erroneous, nor was the trial court's conclusion that the easement rights of ingress and egress included the walking of horses in the Easement Area. The trial court also properly

20

concluded that the acts of the Defendants of placing impediments to the Prairie Horse Farms' use of the easement that justified granting injunctive relief.  Lastly, the trial court's findings regarding the extent of the Easement Area were not clearly erroneous, but even if they were, the trial court also concluded that Prairie Horse Farms use of the Easement Area was limited to the fifty-foot strip and did not include the remainder of the Defendant's property that includes their residence.  Accordingly, we affirm the judgment of the trial court.

Affirmed.

RILEY, J., and CRONE, J., concur.