FOX ET AL. *v.* OHIO VALLEY GAS CORPORATION ET AL.

[Consolidated No. 468S57. Filed April 2, 1968.]

*Cecil C. Tague, Sr., Roger H. Smith* and *Tague & Smith,* of Brookville, for appellants.

*Ewbank & Meyer,* of Lawrenceburg, *Paul D. Lawson,* of Columbus, and *Mendenhall, Hunter & Stohler,* of Winchester, for appellees.

Amici Curiae for certain Indiana public utilities, *Thompson, O'Neal & Smith, Patrick J. Smith* and *James R. McClarnon,* of Indianapolis, for Citizens Gas & Coke Utility; *Hyle G. Burke* and *Bruce N. Cracraft,* of Indianapolis, for Indiana Bell Telephone Company, Inc.; *Jerry P. Belknap, Ralph W. Husted* and *Marcus E. Woods,* of Indianapolis, for Indianapolis Power & Light Company; *Paul G. Jasper* and *Charles W. Campbell,* of Plainfield, for Public Service Company of Indiana, Inc.; *Arch N. Bobbitt,* of Indianapolis, for Illinois Bell Telephone Company; *John E. Fell,* of Kokomo Gas & Fuel Co.; *G. R. Redding* and *Virgil L. Beeler,* of Indianapolis, for Indianapolis Water Company; *Frederick P. Bamberger,* of Evansville, for Southern Indiana Gas and Electric Company; *John F. Bodle,* of Lafayette, for General Telephone Company of Indiana, Inc.; *Fred F. Eichhorn, Jr.* of Hammond, and *William F. Welch,* of Indianapolis, for Northern Indiana Public Service Company; *George P. Osborn,* of Marion, for Central Indiana Gas Company, Inc., Greenfield Gas Company, Inc., and Indiana Gas Distribution Corporation; *Howard J. Cofield,* of Indianapolis, for Kokomo Water Works Company, Muncie Water Works Company, Richmond Water Works Corporation and the Terre Haute Water Works Corporation; *Von E. Livingston* and *David B. Keller,* of Fort Wayne, for Indiana & Michigan Electric Company; and *Charles M. Wells,* of Indianapolis, for Indiana Gas & Water Company, Inc.

ARTERBURN, J.—This case comes to us on transfer from the Appellate Court of Indiana under Acts 1901, ch. 247, § 10, p. 565; 1933, ch. 151, § 1, p. 800, being Burns' Ind. Stat. Anno. § 4-215 [1956 Repl.]. See 222 N. E. 2d 412 and 228 N. E. 2d 42 for opinions of Appellate Court.

This is an appeal from a judgment rendered in favor of appellees' pipe line companies in the Dearborn Circuit Court without a jury in three separate actions for injunction instituted by each of the appellants, wherein they ask for injunction against the appellee, Ohio Valley Gas Corporation, and

appellee, McGuire Pipe Line Construction Company from constructing a gas pipe line upon a county highway right-of-way, the fee of which is owned by the appellants, subject to the easement of the corporations.

The basic facts are uncontroverted in that the appellants own the fee simple title to property which abuts upon Yorkville Road and which is located in Dearborn County, Indiana. The appellee, Ohio Valley Gas Corporation, entered into a contract with the Board of County Commissioners of Dearborn County to lay a pipe line along said right-of-way of the Yorkville Road and along that part of the Yorkville Road of which appellants were the fee simple title holders, subject to the easement. The gas corporation is a public utility organized under the laws of the State of Indiana and engaged in the purchase, transmission, distribution and sale of natural gas to the public located within its territory and is authorized by the Public Service Commission of Indiana to render gas distribution service to rural customers residing within the area of one mile on either side of said proposed pipe line and to customers residing within the city limits of Connersville, Indiana, and rural areas adjacent thereto.

The McGuire Pipe Line Construction Company is an Indiana corporation under contract with the appellee, Ohio Valley Gas Corporation, to construct the pipe line in question. The gas corporation claims the right to use the county highway for pipe line purposes pursuant to a contract entered into between the Board of County Commissioners of Dearborn County and the Ohio Valley Gas Corporation pursuant to Acts 1947, ch. 151, § 3, p. 473, being Burns' Ind. Stat. Anno. § 36-718 [1949 Repl.], which reads as follows:

> *"Pipe line, conduit or drain, laying along or across county highway—Contract for restoration of highway and use thereof—Surety bond filed with commissioners—Contract not to create easement.*—If any person shall desire to lay a pipe line, conduit or private drain, across or along any county highway of this state, such person shall first enter into a contract with the board of county commissioners in each

county wherein it is desired to locate such pipe line, conduit or drain, which contract will obligate the owner thereof to restore the county highway to its original condition after the laying thereof and to reimburse the county for the use of such highway. In addition such person shall file with the board of county commissioners a surety bond, payable to the county, in a sum to be set by and to the approval of the board of county commissioners, conditioned upon the performance of such contract. No such contract shall give any person a permanent right or easement to use any county highway but such contract may give the right to use such highway so long as such pipe line, conduit or drain, does not interfere with the alteration, use, abandonment or public enjoyment of such county highway."

The trial court, in special findings and conclusions of law, denied injunctive relief to the abutting property owners, appellants herein. From this judgment the appeal is taken by the appellants.

The question presented on this appeal is essentially whether or not a public utility duly authorized to transmit gas through a pipe line for public use may construct and lay such pipe line in the public highway without the consent of the abutting land owners who claim that such use is an additional burden and servitude to the fee which is subject to the easement for highway purposes.

In *Kincaid* v. *Indianapolis Natural Gas Company et al.* (1890), 124 Ind. 577, 24 N. E. 1066, the Indianapolis Natural Gas Company laid pipe lines in a county road for the purpose of supplying citizens of the City of Indianapolis pursuant to a license granted by the Board of County Commissioners. Judge Elliott, speaking for the court, said in that case (124 Ind. at 579 and 24 N. E. at 1067) :

"There is an essential distinction between urban and suburban highways, and the rights of abutters are much more limited in the case of urban streets than they are in the case of suburban ways."

The court held, however, that the appellant was not entitled to an injunction to prevent the laying of the pipe lines, but

only to an action of damages. In other words, it recognized the public use and necessity involved, and the right to condemn for a public purpose. It has been pointed out that the statement of Judge Elliott in this case with reference to a distinction between urban and suburban highways is dicta and not essential to the decision made.

Shortly thereafter this Court had before it the case of *Magee* v. *Overshiner* (1898), 150 Ind. 127, 49 N. E. 951. The appellants also rely upon this case. In the *Magee* case, the owner of a telephone system sought to place poles and lines in the streets within the City of Logansport. The abutting property owner along the street where the poles were placed brought an injunction to prevent the use of the street by the telephone system. This Court held, after a considerable discussion of the principles involved, that the placing of poles and lines by a telephone company in city streets was not a new or additional servitude for which abutting property owners were entitled to compensation or complain. That case repeated the distinction made between county roads, highways and streets within cities. Judge Elliott's publication, *The Law of Roads and Streets,* 299 (1890) was cited and quoted:

> "There is an essential difference between urban and suburban servitudes. The owner of the dominant estate in an urban servitude has very much authority, and much greater rights than the owner of the dominant estate in a suburban servitude. The easement of the one is very much more comprehensive than that of the other."

No authorities are cited in his treatise in support of this statement. This is the same statement Judge Elliott made in his opinion in the *Kincaid* case. We can find no substantial basis for the distinction made, nor any sound reasoning in connection with it.

The *Magee* case points out that as cities expand and take over county roads and they become streets, the abutting land owners must lose certain rights in county roads which become city streets. Query: If they had certain rights therein

originally, how can urban expansion take such rights from them? The reasoning of the court in the *Magee* case, however, reaches a better ground for understanding when it states: 150 Ind. 127, at 129-130, 49 N. E. 951-952:

"These general propositions, however, are of little service when we revert to the question: Is the telephone equipment an unnecessary or unreasonable obstruction and a new and additional servitude? Will it suffice to say that because a street was dedicated or condemned fifty years ago, before electric inventions for lighting, communicating oral and telegraphic messages, and propelling street cars were thought of, it could not, therefore, have been condemned or dedicated in contemplation of the uses therein of such inventions; or that because gas had not been used as a method of lighting, the right to lay pipes to conduct the gas could not have been contemplated; or that because water, for protection against fire, had not been forced through pipes in the streets, such use could not have been contemplated, and so on as to the uses of the street for sewerage, for natural gas piping, for telegraph or telephone lines, above or below the surface of the street, or for the possible future uses of pneumatic tubes for the transmission of mail or parcels, and the distribution of steam or electricity for heating, etc.? If what was actually contemplated at the time of the dedication should be found to answer the question in every case, many of the uses common to the streets of every city would be additional servitude for which the fee-owner would be entitled to compensation.

"It must be, however, that the contemplated uses should be deemed to have been not only in the walking, riding upon horseback and in wagons or other vehicles drawn by animals, in the going and returning upon business, social, religious or political missions, but also by such methods of travel and communication, in addition or in substitution for those, as might come into vogue and be accepted and recognized as proper and important uses of the streets in the varying needs and demands of commerce, and the relations of man to man socially and otherwise. If this were not true, the way originally dedicated for a suburban highway, but by the growth of population becoming a city street, or the dedication of a village or town street afterwards becoming the principal thoroughfare of a great city, would be limited to the uses in vogue at the time and suited to the country road or the village or town street, and the

growth of population, the advancement of commerce, and the increase in inventions for the aid of mankind would be required to adjust themselves to the conditions existing at the time of the dedication, and with reference to the uses then actually contemplated. That a dedication or condemnation is deemed to comprehend uses not actually in the minds of the parties at the time is seen from the almost unvarying rules that the electric street railway systems are not a new use and an additional servitude, but are a new method of enjoying an old and ever-existing use."

Shortly thereafter this Court held logically in *Coburn* v. *New Telephone Co.* (1901), 156 Ind. 90, 50 N. E. 324 that the laying of an underground conduit carrying telephone lines in city streets was not an additional servitude to abutting property owners. In *Mordhurst* v. *Ft. Wayne and Southwestern Traction Co.* (1904), 163 Ind. 268, 71 N. E. 642 this Court held the laying of tracks by a street railway within the city could not be objected to by abutting property owners.

In 1942 this Court decided the case of *New York Central R. Co.* v. *Yarian* (1942), 219 Ind. 477, 39 N. E. 2d 604. In that case a land owner reserved a crossing over a railroad right of way dividing his farm. The land owner sought to place an iron pipe as a conduit for electric wires under the right of way in order to serve both parts of his farm. The appellant railroad brought an action to have the lines and conduit removed. Judge Fansler, speaking for the court, said:

"At the time the railroad was built the crossing was no doubt limited in its use to passage of persons on foot and of cattle and farm vehicles, conveying back and forth the products of the farm and the materials and equipment incident to operating the farm. This might in a given case involve the conveyance of water by vehicle from a well separated from the buildings by the servient estate. The conveyance of water by pump through a pipe conduit underneath the railroad's right of way would operate to accomplish the same purpose as hauling water by cart for farm use, and if the pipe is installed in such a manner as not to interfere with the reasonable operation of the railroad it cannot be seen that the owner of the fee in the railroad right of way is injured in any way, or that the use of the

fee is interfered with in any respect not contemplated in the original grant. In other words, no additional burden is cast upon the fee. We find support for this view in the construction put upon easements acquired by eminent domain for public highways. At the time easements for our early highways were condemned, the way was used for the passage of foot pasengers, animals, and animal-drawn conveyances only, and yet, as gas for fuel, telephones, and electricity came into use, the easements were construed as intended to be broad enough to permit the laying of pipes and the installation of poles and wires in, upon, and under the streets and highways, and it was concluded that such a use cast no burden upon the fee beyond that which was contemplated and paid for in the original taking. . . .

"Electricity is largely used for power and light and for the operation of refrigerating and labor-saving machines on farms and in farm homes, and that its use contributes to the full and profitable enjoyment of a farm can hardly be doubted.

"It must be concluded that the reservation of a farm crossing is broad enough to permit the bringing in of the conduit underground for the purpose of supplying electricity." *New York Central R. Co.* v. *Yarian* (1942), 219 Ind. 484, 485, 39 N. E. 2d 606, 607.

It seems to us there is sound logic and reasoning to support the decision in the *Yarian* case.

With the growth of population, advancement of commerce and new inventions, society must adjust itself from existing conditions to growing and changed conditions and specifically to new means of transportation. A dedication of land for highway purposes when made is deemed to comprehend not only specific uses in the minds of the parties at the time, but also those developed and invented, which fall into the category of transportation in the future. Industry has found it more feasible, for example, to move oil or gas through pipe lines in many instances, rather than by truck on the surface along the highways. Courts must recognize these advances in the science of transporation.

Likewise, we find no basis for a distinction to be made between city streets and rural highways as to the use of

utility facilities therein and thereon. We can find no logical basis for the distinction attempted to have been made by Judge Elliott in the early case of *Kincaid* v. *Indianapolis Natural Gas Co. et al.* (1890), 124 Ind. 577, 24 N. E. 1066 and which in our opinion was unnecessary to that decision.

Transfer is granted from the Appellate Court, and the judgment of the trial court is affirmed.

Lewis, C. J. and Mote, Hunter and Jackson, JJ. concur.

NOTE.—Reported in 235 N. E. 2d 168.