**LOUISVILLE & INDIANA RAILROAD COMPANY, Appellant–Plaintiff,**

v.

**INDIANA GAS COMPANY, Appellee–Defendant.**

No. 03A01–0210–CV–384.

Court of Appeals of Indiana.

Aug. 4, 2003.

Thomas C. Bigley, Jr., Jason H. Guthrie, Sharpnack Bigley LLP, Columbus, IN, Attorneys for Appellant.

R. Thomas Bodkin, Douglas A. Welp, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, Jeffrey L. Beck, Beck, Harrison & Dalmbert, Columbus, IN, Robert Heidorn, General Counsel of Indiana Gas & Vectren Utility Holdings, Evansville, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

Appellant-plaintiff Louisville & Indiana Railroad Company (Railroad) appeals the entry of summary judgment for appellee-defendant Indiana Gas Company (IGC) in the Railroad's action for trespass, license rent, quantum meruit, and quantum valebant.[1] Specifically, the Railroad argues that the trial court erred as a matter of law when it held that the deeds made to the Railroad's predecessors in interest did not provide ownership in fee simple. Additionally, the Railroad claims that the trial court erred in holding that the Railroad had not exhausted its administrative remedies and in dismissing the Railroad's equitable claims. Concluding that the trial court erred in entering summary judgment in favor of IGC and in dismissing the Railroad's equitable claims, we reverse and remand for trial.

*FACTS*

In 1832, the Indiana General Assembly chartered the Railroad's predecessor, the Ohio and Indianapolis Railroad Company. This Act provided the legal existence for the Railroad's predecessor and gave it the power to purchase real estate but did not expressly provide the authority to hold the real estate in fee simple.

In 1846, the Indiana General Assembly amended the 1832 Act. The 1846 Act provided the same real estate powers and rights as the 1832 Act, stating, in relevant part that "it is the object and intention of this act to secure and perpetuate the rights and obligations" of the Railroad under the 1832 Act. Appellant's App. p. 58.

---

1. Quantum valebant is an action for the payment of the reasonable value of goods furnished by the plaintiff. *Black's Law Dictionary* 1244 (6th ed.1990). It differs from quantum meruit in that an action for quantum meruit seeks recovery for the reasonable value of the plaintiff's services. *Id.* at 1243.

On June 1, 1848, Leonard Wales of Bartholomew County transferred a piece of land to the Railroad by deed including the following language:

I, Leonard Wales of the County of Bartholomew, and State of Indiana for and in consideration of the advantages which will or may result to the public in general and myself in particular, by the construction of the Ohio and Indianapolis Rail Road, as now _____ surveyed, or as the same may be finally located for the purposes of facilitating the construction and completion of said work, do hereby, for myself, my heirs, executors, administrators, and assigns, Release and Relinquish, to the Ohio and Indianapolis Rail Road Company, the Right of Way, and all my interest in so much of the following described piece or parcel of Land, as the said company are, by charter, entitled to hold, for the purpose of constructing said road.

. . . .

And I do further release and relinquish to the said Ohio and Indianapolis Rail Road Company, all damages and right to damages, which I may sustain or be entitled to, by reason of anything connected with, or consequent upon the construction of said Rail Road, or the repairing thereof.

Appellant's App. p. 42. County Road 440 South was built next to this parcel. On January 15, 1849, the Indiana General Assembly approved an act that allowed the Railroad to take property in fee simple. Thereafter, on March 5, 1852, the Railroad purchased a piece of land from Benjamin Irwin. The deed conveying the land read as follows:

I, Benjamin Irwin of the County of Bartholomew, and State of Indiana for and in consideration of one dollar in hand aid, and the advantages which will or may result to the public in general, and

myself in particular, by the construction of the Jeffersonville Rail Road, as now being surveyed, or as the same may be finally located, and for the purposes of facilitating the construction and completion of said work, do hereby, for myself, my heirs, executors, administrators, and assigns, Release, Relinquish, and Convey, to the Jeffersonville (late Ohio and Indianapolis) Rail Road Company, the Right of Way, and all my interest in so much of the following described piece or parcel of Land, as the said Company are, by charter, entitled to hold, for the purpose of constructing said road.

. . . .

And I do further release and relinquish to said Rail Road Company, all damages and right to damages, which I may sustain or be entitled to, by reason of anything connected with, or consequent upon the construction of said Rail Road, or the repairing thereof.

Appellant's App. p. 43. County Road 550 North was constructed beside this parcel.

During the week of November 11, 1999, IGC installed a gas line perpendicular to the Railroad's tracks in the vicinity of County Road 550 North. Six months later, IGC installed a gas line perpendicular to the Railroad's tracks at County Road 440 South. A few weeks before the second gas line installation, the Railroad filed a complaint against IGC, alleging trespass, license rent, quantum meruit, and quantum valebant. The parties thereafter filed cross-motions for partial summary judgment. The Railroad claimed that no dispute remained as to whether IGC ran its gas lines under the parcels of land owned by the Railroad without authorization and, as a result, the Railroad was entitled to judgment as a matter of law. IGC asserted that it was beyond dispute that the Railroad's charter did not allow it to own property in fee simple and, accordingly,

the Railroad could not maintain a suit for trespass. On July 3, 2002, the trial court held a hearing on the parties' motions.

On September 10, 2002, the trial court entered a partial summary judgment in favor of IGC, finding that the Wales and Irwin deeds granted the Railroad only easements. Specifically, the trial court found that the Railroad's charter did not allow the railroad to own property in fee simple and that the 1849 Act did not retroactively cure this disability. Additionally, the trial court held that the language of the Wales and Irwin deeds unambiguously transferred only an easement to the Railroad, not an interest in fee simple. Because the Railroad held only an easement, the trial court reasoned, it could not maintain an action for trespass. Moreover, the trial court held that it lacked subject matter jurisdiction over the Railroad's equitable claims because the Railroad had not exhausted its administrative remedies. Consequently, the trial court held, jurisdiction lay with the Indiana Utility Regulatory Commission (IURC). Thus, the trial court dismissed the equitable claims. The Railroad now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We first note that the trial court granted IGC's motion for partial summary judgment on one issue and dismissed the issues that remained because it held that the Railroad had not exhausted its administrative remedies. The party appealing from "a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous." *Severson v. Bd. of Tr. of Purdue Univ.*, 777 N.E.2d 1181, 1188 (Ind. Ct.App.2002). Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party." *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001).

Moving to the trial court's dismissal of the Railroad's remaining claims, we note that dismissal for failure to exhaust administrative remedies is tantamount to a dismissal under an Indiana Trial Rule 12(B)(1) motion for lack of subject matter jurisdiction. *Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 648 N.E.2d 641, 646 (Ind.1995). Thus, for the issues dismissed on this basis, our standard of review is de novo. *Turner v. Richmond Power & Light Co.*, 763 N.E.2d 1005, 1007 (Ind.Ct.App.2002).

### II. Were the Parcels at Issue Easements?

The Railroad alleges that the trial court erred in holding that the parcels at issue were merely easements. Specifically, the Railroad urges that the trial court erred when it held that the 1849 Act was not curative legislation that enabled the Railroad to hold the Wales property in fee simple. Additionally, the Railroad argues that the trial court erred when it held that the deeds' language transferred only easements.

### A. Could the Railroad Hold Property in Fee Simple?

The Railroad argues that the trial court erred when it held that the 1849 Act, which amended the Railroad's charter, was not curative legislation that provided the Railroad with the power to hold property in fee simple. Appellant's Br. p. 32. When reviewing a trial court's statutory interpretation, we use a de novo stan-

dard because in such matters we "owe the trial court no deference." *Family & Soc. Servs. Admin. v. Schluttenhofer*, 750 N.E.2d 429, 432 (Ind.Ct.App.2001).

We note that the general rule involving curative statutes is that

[I]f the thing wanting, or which failed to be done, and which constitutes the defect in the proceeding, is something the necessity for which the legislature might have dispensed with by a prior statute, then it is not beyond the power of the legislature to dispense with it by a subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by subsequent law.

*Johnson v. Bd. of Comm'rs of Wells County*, 107 Ind. 15, 22–23, 8 N.E. 1, 4 (1886) (quoting Thomas Cooley, *A Treatise on the Constitutional Limitations Which Rest upon the Legislative Power of the States of the American Union* 371 (1868)). In *Johnson*, the Wells County Board of Commissioners approved the construction of the Bluffton and Rockford Gravel Road and concomitant levy on landowners in 1881. However, the meeting wherein the Board approved the gravel road's construction was not a regular or special session meeting. The Board was meeting in an extraordinary session solely for the purpose of receiving reports from the county school trustee. Concerned with this procedural defect, the General Assembly then passed an act in April 1885 to declare valid any acts authorized by the Board with respect to the Bluffton and Rockford Gravel Road. The act's specific subject matter was solely the actions taken with respect to the Bluffton and Rockford Gravel Road. Johnson, however, filed suit a month later to enjoin the construction

and levies because the Board had approved the gravel road construction in an extraordinary session. Nevertheless, our supreme court held that because the Board had the authority to approve the construction of the gravel road and associated levies, any defects in procedure "were such as might be cured by a legalizing statute, and such as were cured by the legalizing act of 1885." *Id.* at 24, 8 N.E. at 5.

Here, neither the 1832 Act-which chartered the Railroad-nor the 1846 Act specifically provided that the Railroad could hold property in fee simple. However, IGC agrees that the General Assembly, when passing the 1832 and 1846 Acts had the *authority* to give the Railroad the express right to hold property in fee simple. Appellee's Br. p. 21–22. Thus, the General Assembly's omission of this power from the 1832 and 1846 Acts, coupled with the subsequent addition of it in the 1849 Act, can be seen as an error in procedure followed by curative legislation, as was the case in *Johnson*. This is especially evident by the fact that the 1849 Act's subject matter related to solely the Railroad and its powers, much as the curative legislation at issue in *Johnson* related solely to the Bluffton and Rockford Gravel Road. Thus, the 1849 Act was curative legislation that merely acted to clarify the power of the Railroad to hold land in fee simple. Since the curative act retroactively gave the Railroad the power to hold property in fee simple, the Railroad had the authority to take and hold property in fee simple.

### B. Did the Deeds Transfer the Property in Fee Simple?

The Railroad maintains that the trial court erred when it interpreted the Wales and Irwin deeds to provide only for an easement. Specifically, the Railroad argues that the trial court's reasoning that the term "right of way" in both deeds

provides only an easement is contrary to law.

When construing a deed, our main concern is to give effect to the intent of the parties. *Poznic v. Porter County Dev. Corp.*, 779 N.E.2d 1185, 1189 (Ind.Ct. App.2002). Additionally, "one of the most important rules in the construction of deeds is so *to construe them that no part shall be rejected.* The object of all construction is to ascertain the intent of the parties and *it must have been their intent to have some meaning in every part.*" *Tazian v. Cline*, 686 N.E.2d 95, 97 (Ind. 1997) (emphasis in original).

Our supreme court established general rules of construction for conveyances of land to railroads in *Hefty v. All Other Members of the Certified Settlement Class:*

1. Conveyance to a railroad of a strip, piece, or parcel of land without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee; but reference to a right-of-way in such a conveyance generally leads to its construction as conveying only an easement.

2. While the intent of the parties must be determined from the language of the deed alone when it is not ambiguous, courts will construe deeds prepared by railroads in the light most favorable to the grantors.

3. When it is necessary to construe the intent of the parties because of ambiguity as to the character of the interest or title conveyed, (a) where the railroad was responsible for the form of the deed, courts will construe the absence of language conveying the strip of land in fee simple as evidence of the intent of the parties that the strip of land not be conveyed in fee simple; and (b) to further the public policy of our state, courts will generally construe the ambiguity in favor of the original grantors, their heirs or assigns.

680 N.E.2d 843, 854–55 (Ind.1997) (citations omitted).

Moving to the language of the Wales and Irwin deeds, we note that both contain the phrase "right of way." We also note that both contain the phrase "and all my interest in so much of the following described piece or parcel of Land." Appellant's App. p. 42, 43. *Hefty* held that "reference to a right-of-way in such a conveyance *generally* leads to its construction as conveying only an easement." *Id.* at 854 (emphasis added). When the latter phrase—"all my interest"—is taken into account, as *Tazian* requires, however, the conveyance unambiguously reflects a desire to convey the land in fee simple and not simply an easement. Thus, the language of the deeds here is outside the scope of *Hefty*'s general rule.

Accordingly, we agree with the trial court's assessment that the deeds "are clear and unambiguous." Appellant's Br. p. 30. However, we believe the trial court's conclusion that only an easement was granted is erroneous. The deeds granted the Railroad "all my interest in so much of the following described piece or parcel of Land." Appellant's App. p. 42, 43. At the summary judgment hearing, IGC admitted that Wales and Irwin held their parcels in fee simple when it argued that the surrounding landowners, the successors in interest to Wales and Irwin, had standing to sue for trespass. Tr. p. 37. Logically, if Wales and Irwin held their land in fee simple and each deeded "all my interest" in the land to the Railroad, then Wales and Irwin transferred the land in fee simple to the Railroad. Because the Railroad held the parcels in fee simple, the trial court erred in holding that IGC was entitled to judgment as a matter of law

because the Railroad could not maintain a claim for trespass.

### III. Exhaustion of Administrative Remedies

■■■ The Railroad claims that the trial court erred in holding that the Railroad had failed to exhaust its administrative remedies and in dismissing the Railroad's equitable claims of license rent, quantum meruit, and quantum valebant. Specifically, the Railroad argues that the trial court erroneously applied Indiana Code section 8–1–2–5(b) in holding that the IURC had subject matter jurisdiction over the equitable claims.

■■■ We first note that Indiana Code section 8–1–2–5(b) reads as follows:

In case of failure to agree upon such use or the conditions or compensations for such use, or in case of failure to agree upon such physical connection or connections, or the terms and conditions upon which the same shall be made, any public utility or any person, association, limited liability company, or corporation interested *may* apply to the commission. . . .

(emphasis added). When determining the meaning of a statute, we first look to the plain, ordinary meaning of its words. *Mears v. Lake County Council,* 709 N.E.2d 747, 749 (Ind.Ct.App.1999). We have previously held that "normally, the word 'may' in a statute implies a permissive condition." *Williams v. City of Indianapolis Dep't of Pub. Works,* 558 N.E.2d 884, 887 (Ind.Ct.App.1990). This is because the legislature may make an action mandatory by substituting the word "shall" instead of "may." *City of Tell City v. Noble,* 489 N.E.2d 958, 961 (Ind.Ct.App. 1986).

■■■ Thus, the statute here does not *require* that parties submit their dispute to the IURC. The statute only gives the par-

ties the option to submit their disagreement to the IURC. Accordingly, the trial court was not deprived of jurisdiction and could properly resolve the Railroad's claims. As a result, the trial court erred in holding that Indiana Code section 8–1–2–5(b) deprived it of jurisdiction with respect to the Railroad's equitable claims.

### CONCLUSION

In light of the issues discussed above, we conclude that the 1849 Act was a curative act that retroactively granted the Railroad the power to hold property in fee simple. Additionally, the record shows that Wales and Irwin transferred their parcels in fee simple to the Railroad, thus enabling the Railroad to maintain a claim for trespass. Finally, we find that the trial court erred in dismissing the Railroad's equitable claims on the basis that the Railroad had failed to exhaust its administrative remedies. As a result, we reverse the trial court and remand for trial.

Reversed and remanded.

SULLIVAN, J. concurs.

DARDEN, J., dissents with opinion.

DARDEN, Judge, dissenting.

I respectfully dissent from the majority decision. In my view, the decision in *Hefty v. All Other Members of the Certified Settlement Class,* 680 N.E.2d 843 (Ind. 1997), its predecessors and progeny, and a fair reading of the deeds at issue dictate that the Railroad was granted easements and not fee simple in the parcels.

As noted by the majority, generally, use of the phrase "right of way" imports the conveyance of an easement only. *See Tazian v. Cline,* 686 N.E.2d 95, 98 (Ind.1997); *Hefty,* 680 N.E.2d at 855; *Brown v. Penn Central Corp.,* 510 N.E.2d 641, 644 (Ind. 1987). Also, courts examine the amount of

the consideration paid to determine whether the grantors intended to convey a fee simple or an easement. *Tazian*, 686 N.E.2d at 99. If the amount of consideration is nominal or expressed as a benefit to be obtained by the future construction of the railroad, the consideration is indicative of an intent to convey an easement. *Id.*

Here, in my opinion, both deeds convey only a "right of way" for nominal consideration. Given that the public policy of Indiana favors finding easements rather than conveyances in fee simple, *see Hefty*, 680 N.E.2d at 854, and the above mentioned factors, I would vote to affirm the trial court in all matters.