ATTORNEYS FOR APPELLANT/CROSS-APPELLEE
Thomas C. Bigley, Jr.
Jason H. Guthrie
Columbus, IN

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT
R. Thomas Bodkin
Douglas A. Welp
Evansville, IN

Jeffrey L. Beck
Columbus, IN

Robert Heidorn
Evansville, IN

# In the
# Indiana Supreme Court

No. 03S01-0401-CV-00009

LOUISVILLE & INDIANA RAILROAD COMPANY,

*Appellant/Cross-Appellee (Plaintiff below),*

v.

INDIANA GAS COMPANY, INC.,

*Appellee/Cross-Appellant (Defendant below).*

Appeal from the Bartholomew Superior Court, No. 03D02-0004-CP-50
The Honorable Kathleen Tighe Coriden, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 03A01-0210-CV-384

**June 15, 2005**

**Shepard, Chief Justice.**

Almost continually from the time of statehood, building Indiana's economy has necessitated constructing networks for the transport of people and product, energy and communications. This litigation centers on one of perhaps thousands of points at which these

1

networks intersect. A railroad contends that a gas company which has laid pipe along a county road that crosses the tracks owes rent to the railroad for passing underneath. We conclude that rent is not owed.

**Facts and Case History**

The basic facts are not controverted. County Roads 550 North and 400 South in Bartholomew County each cross tracks of the Louisville & Indiana Railroad Company ("Railroad"). These tracks rest on fee or right-of-way owned by the Railroad. Indiana Gas Company, Inc. ("Indiana Gas"), a public utility, installed gas pipelines following the county right-of-way along the two roads, thus crossing under the Railroad's tracks. The Railroad says that Indiana Gas installed the pipe without consent from or compensation to the Railroad.

The Railroad filed a four-count complaint: (1) trespass; (2) license rent; (3) quantum meruit; and (4) quantum valebant. The parties filed cross-motions for summary judgment on the trespass and license rent claims. The trial court concluded that the Railroad owned an easement and held that one could not by definition commit trespass against the holder of an easement. Thus, it granted partial summary judgment in favor of Indiana Gas on the trespass claim. The court dismissed the remainder of the case based on its conclusion that jurisdiction over the Railroad's claims otherwise lay with the Indiana Utilities Regulatory Commission under Indiana Code § 8-1-2-5, referred to by the parties as the "Joint Use Statute." The parties cross-appealed, and the Court of Appeals reversed and remanded for a trial on the merits. Louisville & Indiana R.R. Co. v. Indiana Gas Co., 792 N.E.2d 885, 892 (Ind. Ct. App. 2003) vacated. We grant transfer.

The order in which the parties' contentions should be approached is a matter of some substance. We have approached them in what seems to be the best dipositive order.

## I. What Does the Railroad Own?

The litigants have joined in extensive debate over whether the Railroad's interest in the land at issue is fee simple or merely an easement, and the rulings in the trial court and the Court of Appeals reflect this emphasis. The nature of the Railroad's ownership, the parties say, drives several of the issues presented. For example, does one owe rent to the owner of a mere right-of-way? Or, does application of the Joint Use Statute vary depending on the nature of the Railroad's interest?

This debate presents interesting questions of legal history. The Railroad's operation predates by several decades the adoption of general statutes on railroads and corporations. Its corporate form and powers flow from legislative charters originally granted to "the Ohio and Indianapolis Rail Road Company" in 1832 and from later legislative acts affecting the operation of that company and its successors.[1] The legislature wrote statutes about the Railroad three times before expressly authorizing "fee simple" ownership of property. The deeds at issue in this case were acquired during the interval. Counsel thus contest whether references in those deeds to the powers of the charter should be read as giving only an easement and whether the third statute was "remedial" as we understand that doctrine today.

It is difficult to imagine the creation of such a substantial enterprise as a railroad without buying land in fee, but knowing with confidence whether this was so would require considerable effort. The meaning of these intertwined Nineteenth Century documents turns as much on custom and practice as it does on Twenty-First Century rules of construction. While information on such matters is knowable, it is not surprising that the scale of the present litigation has made it diseconomic for the parties to pursue such an investigation.

---

[1] These individual legislative charters were the ordinary method by which railroads took form under the Indiana Constitution of 1816. See, e.g., 1851 Local Laws of Indiana, ch. 62, 96 (authorizing James Emison, Chauncey Rose, Horace Shepard, and others to build a railroad from Vincennes to Terre Haute and northward).

3

These intriguing matters would certainly be central to resolving, say, a dispute between grantee and grantor, but that is not the nature of the litigation before us. In the end, we conclude that the statutory regimes applicable to this dispute lead to the same outcome regardless of the nature of the Railroad's ownership interest.

## II. Dismissal for Lack of Jurisdiction

The Railroad seeks compensation for the use of its real estate interest under the theories of license, quantum meruit and quantum valebant. The trial court determined that the Joint Use Statute, Indiana Code § 8-1-2-5, governed these claims. That conclusion prompted it to dismiss for lack of subject matter jurisdiction, saying that the proper venue for determining what might be at stake was the Indiana Utility Regulatory Commission.

Both parties assault this holding. The Railroad appeals the dismissal and the trial court's failure to find that, pursuant to the statute, Indiana Gas should have sought permission from the Railroad before installing its pipe under the Railroad's tracks and must now pay reasonable compensation. Indiana Gas appeals the trial court's determination that the installation of its pipe beneath the railroad tracks constituted a "joint use" of the Railroad's facilities within the meaning of the statute.

The Joint Use Statute at the heart of this debate provides:

> Every public utility, and every municipality, and every person, association, limited liability company, or corporation having tracks, conduits, subways, poles, or other equipment on, over, or under any street or highway shall for a reasonable compensation, permit *the use of the same* by any other public utility or by a municipality owning or operating a utility, whenever public convenience and necessity require such use, and such use will not result in irreparable injury to the owner or other users of *such equipment*, nor in any substantial detriment to the service to be rendered by such owners or other users.

4

Ind. Code Ann. § 8-1-2-5(a) (West 2001)(emphasis added). The same section provides a method for resolving disputes about particular joint uses or about compensation for such uses. The language describing this procedure is helpful in defining the statute's overall purpose:

> In case of failure to agree upon such use or the conditions or compensations for such use, or in case of failure to agree upon such physical connection or connections, or the terms and conditions upon which the same shall be made, any public utility or any person, association, limited liability company, or corporation interested may apply to the commission and if after investigation the commission shall ascertain that public convenience and necessity require such use or such physical connections, and that such use or such physical connection or connections would not result in irreparable injury to the owner or other users of such equipment or the facilities of such public utilities, nor in any substantial detriment to the service to be rendered by such owner or other public utilities or other users of such equipment or facilities, it shall by order direct that such use be permitted and prescribe reasonable conditions and compensations for such joint use and that such physical connection or connections be made and determine how and within what time such connection or connections shall be made, and by whom the expense of making and maintaining such connection or connections shall be paid.

§ 8-1-2-5(b). These provisions focus by their own terms on allowing, for example, one utility to use the poles of another, as when telephone companies and electric companies string lines along the same corridor. The statute describes the end result as the "physical connection" of such facilities. The apparent object is to require cooperation among enterprises using the public right-of-way in order to maximize the use of existing equipment, minimize the need for duplicative facilities, and facilitate the provision of multiple public services. The statute applies to "tracks, conduits, subways, poles, or other equipment on, over, or under any street or highway." It does not make any mention of land. § 8-1-2-5(a). The statute contemplates that a public or municipal utility might use existing equipment in the public right-of-way; it does not govern the use of the right-of-way itself.

In this case, Indiana Gas installed pipes in the public right-of-way, crossing beneath the railroad tracks. Because Indiana Gas did not use the tracks or other equipment of the Railroad,

we are hard-pressed to see how the Joint Use Statute applies. Thus, the Railroad is not entitled to compensation under the statute.[2]

## III.  Right of Way Statute

Indiana Gas contends that it was entitled to lay its pipes by virtue of a different section of the Code:

> Public and municipally owned utilities are authorized to construct, operate, and maintain their poles, facilities, appliances, and fixtures upon, along, under, and across any of the public roads, highways, and waters outside of municipalities, as long as they do not interfere with the ordinary and normal public use of the roadway . . . .

Ind. Code Ann. § 8-20-1-28 (West 2001).  Indiana Gas is, of course, a public utility.  Section 28 therefore seems, in relatively straightforward terms, to authorize it to enter upon the county right-of-way and install the pipe along the roadway.

Over several generations, the courts have understood this statute as contemplating that the public utility would not need to compensate the landowner, inasmuch as such a use does not place an additional burden on the subservient land.  As we said in Fox v. Ohio Valley Gas Corp.:

> At the time easements for our early highways were condemned, the way was used for the passage of foot passengers, animals, and animal-drawn conveyances only, and yet, as gas for fuel, telephones, and electricity came into use, the easements were construed as intended to be broad enough to permit the laying of pipes and the installation of poles and wires in, upon, and under the streets and highways, and it was concluded that *such a use cast no burden upon the fee beyond that which was contemplated and paid for in the original taking*.

---

[2] Furthermore, because the statute does not apply, it was error for the trial court to dismiss the license, quantum meruit and quantum valebant counts for lack of subject matter based upon the statute.

250 Ind. 111, 118, 235 N.E.2d 168, 172 (1968) (quoting New York Cent. R.R. Co. v. Yarian, 219 Ind. 477, 484-85, 39 N.E.2d 604, 606 (1942)) (emphasis added). See also Deetz v. Northern Ind. Fuel & Light Co., 545 N.E.2d 1103 (Ind. Ct. App. 1989)(gas company did not need landowner's consent to install pipeline in county right-of-way and landowner did not suffer any legal damages from such installation).

The nature of the Railroad's interest in the land transversed by the county right-of-way does not affect this result. In Fox the court held that a fee owner was not entitled to additional compensation when a gas company laid pipe in the county right-of-way that crossed his land. Fox, 250 Ind. at 117-19, 235 N.E.2d at 172-73. If the Railroad owns the land in fee, Fox applies directly, and the Railroad is not entitled to compensation beyond what it, or its predecessor in interest, received when the right-of-way was established. If the Railroad possesses an easement, it does not posses rights greater than that of the underlying fee owner. These are among the reasons we observed above that deciding the nature of the Railroad's interest was not pivotal to resolution of the present case.

Because Indiana Gas was authorized both by statute and by Fox to enter onto the county right-of-way to install the pipe, summary judgment in favor of Indiana Gas on the trespass count was appropriate, and we therefore affirm it. Similarly, because the statutorily authorized pipeline does not place an additional burden on the land, the Railroad is not entitled to compensation, and the trial court should have granted summary judgment in favor of Indiana Gas on the license rent issue.[3]

Having said that, we observe that section 28 makes the user responsible for burdens it imposes on the "ordinary and normal public use of the roadway." § 8-20-1-28. We presume that common law precepts would likewise serve to protect the interests of the Railroad in the continued peaceful and efficient use of its tracks to facilitate commerce. For these reasons, consultation about the nature and timing of construction at such intersections is obviously in the

_____

[3] The quantum meruit and quantum valebant counts seem aimed mostly toward the same types of relief as the license rent and trespass claims and are likely resolvable on similar grounds, but Indiana Gas did not seek summary judgment on those counts. Those counts were not subject to dismissal on grounds they should have been submitted to the IURC.

7

best financial interest of all concerned (as utility company signs sometimes say, "Call before you dig.").

## Conclusion

We affirm the trial court's grant of summary judgment on the trespass claim and its dismissal of the license rent claim. We reverse its dismissal of the claims for quantum meruit and quantum valebant.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**