ATTORNEYS FOR PLAINTIFFS
Brent W. Baldwin
J. Robert Sears
Baker Sterchi Cowden & Rice, L.L.C.
St. Louis, MO

Bryan H. Babb
Alan S. Townsend
Bose McKinney & Evans LLP
Indianapolis, IN

ATTORNEYS FOR DEFENDANT
Ignacia S. Moreno
Assistant Attorney General

David C. Shilton
United States Department of Justice
Environment & Natural Resources Division
Washington, DC

Joseph H. Hogsett
United States Attorney
Southern District of Indiana

Shelese Woods
United States Attorneys Office
Indianapolis, IN

## In the
## Indiana Supreme Court

FILED

Mar 20 2012, 11:45 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 94S00-1106-CQ-333

HENRY L. HOWARD, ET AL.,                                    *Plaintiffs,*

v.

UNITED STATES,                                             *Defendant.*

Certified Question from the United States Court of Federal Claims,
No. 1:09-CV575-MBH,
The Honorable Marian Blank Horn, Judge

**March 20, 2012**

**Dickson, Justice.**

The United States Court of Federal Claims has certified for our resolution the following question:

> Under Indiana law, are railbanking and interim trail use pursuant to 16 U.S.C. § 1274(d)
> uses that are within the scope of the easements acquired by the railroad companies either
> by prescription, condemnation, or the deed at issue; and if either is not within the scope

of the easements originally acquired, is railbanking with interim tr[ai]l use a shifting public use?

Pursuant to Indiana Appellate Rule 64, we accepted the question and now answer both parts in the negative. Under Indiana law, railbanking and interim trail use pursuant to 16 U.S.C. § 1274(d) are not uses within the scope of the easements, and railbanking with interim trail use does not constitute a permissible shifting public use.

The underlying suit is what is commonly referred to as a "Rails to Trails" case. *See* Consol. Rail Corp., Inc. v. Lewellen, 682 N.E.2d 779 (Ind. 1997) (holding that railroad easements had been abandoned and thus could not be transferred to railroad corridor trails group). The question arises from a federal lawsuit brought by 128 Indiana landowners whose lands are burdened by railroad easements. Together these easements compose a railroad corridor approximately twenty-one miles in length. Because the rail lines are no longer in use, the railroad, pursuant to federal law, 49 U.S.C. § 10903, sought authorization from the Surface Transportation Board ("STB") to abandon the easements. The STB authorized the railroad to negotiate transfer of the railroad corridor to the Indiana Trails Fund for use as a public trail ("interim trail use") in accordance with the National Trails System Act ("Trails Act"), 16 U.S.C. § 1247. The Trails Act authorizes the STB to facilitate such transactions in order to "preserve established railroad rights-of-way for future reactivation," *Id.* § 1247(d), a process frequently called "railbanking."

The Court of Federal Claims certified this question to us in accordance with Preseault v. I.C.C., which upheld the constitutionality of the Trails Act but noted that "[s]tate law generally governs the disposition of reversionary interests" and that, "[b]y deeming interim trail use to be like discontinuance rather than abandonment, Congress prevented property interests from reverting under state law." 494 U.S. 1, 8, 110 S. Ct. 914, 920, 108 L. Ed. 2d 1, 11 (1990) (citation omitted). In her concurrence, Justice O'Connor stated, "Determining what interest petitioners would have enjoyed under [state] law, in the absence of the [Interstate Commerce Commission]'s recent actions, will establish whether petitioners possess the predicate property interest that must underlie any takings claim."[1] *Id.* at 21, 110 S. Ct. at 926, 108 L. Ed. 2d at 20 (O'Connor, J., con-

---

[1] The Interstate Commerce Commission ("ICC") was the predecessor to the STB. The ICC was abolished in 1995 and replaced with the STB. ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803.

curring). The Court concluded that any remedy to which a landowner may be entitled must be secured through the provisions of the Tucker Act, 28 U.S.C. § 1491(a)(1). *See* Preseault, 494 U.S. at 11–17, 110 S. Ct. at 921–24, 108 L. Ed. 2d at 13–17.

To determine whether railbanking and interim trail use pursuant to the Trails Act are permitted uses within the scope of the easements under Indiana law, we first consider Indiana law regarding the abandonment and the preservation of railroad rights-of-way. The General Assembly has specifically delineated when and how a railroad easement may be deemed abandoned. *See* Ind. Code §§ 32-23-11-6 to -8; Lewellen, 682 N.E.2d at 783 ("[T]he common law on whether abandonment [of railroad easements] has occurred was superseded by the General Assembly."). One means of preserving the railroad easements is by converting it to a recreational trail under the Trails Act. Ind. Code § 32-23-11-7 ("A right-of-way is not considered abandoned if the [ICC] or [STB] imposes on the right-of-way a trail use condition under 16 U.S.C. § 1247(d)."). Accordingly, such rights-of-way may be "railbanked" indefinitely because such action does not abandon the easement but rather preserves it. This informs, but does not settle the first part of the certified question, which asks whether, under Indiana law, such Trails Act uses are within the scope of the easements acquired. This question—regarding the use of the railroad rights-of-way as public recreational trails—is governed by the Indiana common law on easements.

Indiana law with respect to the scope of easements[2] is well settled. The extent of the easement interest is determined by the purpose served by the easement. New York Cent. R.R. Co. v. Yarian, 219 Ind. 477, 482–83, 39 N.E.2d 604, 606 (1942) ("It is sometimes said that reservations of easements are strictly limited to the purposes in the minds of the parties, but we believe a proper application of the rule puts the limitation not upon the character of traffic upon a reserved way, but upon the purpose to be served by the traffic."); *see also* McCauley v. Harris,

---

[2] An easement is:

An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road). The land benefitting from an easement is called the *dominant estate*; the land burdened by an easement is called the *servient estate*.

Black's Law Dictionary 585–86 (9th ed. 2009). The "scope" of an easement refers to the extent or boundaries of that "specific limited purpose" which benefits the dominant estate and burdens the servient estate.

3

928 N.E.2d 309, 314 (Ind. Ct. App. 2010) ("It is well established that easements are limited to the purpose for which they are granted."), *trans. denied*.

> Usually, easements arise to fill some need or serve some purpose. That purpose, whether expressed in the grant, implied, or acquired through prescription, is the focal point in the relationship which exists between the titleholders of the dominant and servient estates. The servient estate is burdened to the extent necessary to accomplish the end for which the dominant estate was created. The titleholder of the dominant estate cannot subject the servient estate to extra burdens any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement.

Klotz v. Horn, 558 N.E.2d 1096, 1099–1100 (Ind. 1990) (citations omitted) (quoting Brown v. Heidersbach, 172 Ind. App. 434, 438, 360 N.E.2d 614, 618 (1977), *reh'g denied*, *trans. denied*). And while this Court has had little occasion to apply these rules of late, these principles continue to have force today. *See, e.g.*, Rehl v. Billetz, No. 52A05-1105-PL-246, 2012 WL 77213, at *4 (Ind. Ct. App. 2012), *pet. for reh'g pending*; Kwolek v. Swickard, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011), *trans. denied*; McCauley, 928 N.E.2d at 314.

The fact that the majority of the easements at issue in this case were created by prescription or condemnation and not granted by deed[3] does not alter the analysis. The purpose of the adverse use giving rise to an easement by prescription determines the extent of the interest. Consumers' Gas Trust Co. v. Am. Plate Glass Co., 162 Ind. 393, 396, 68 N.E. 1020, 1021 (1903) ("A prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences."); Brookville & Metamora Hydraulic Co. v. Butler, 91 Ind. 134, 136 (1883) ("A prescriptive right can never be broader than the claim evidenced by [the] user."); Postlethwaite v. Payne, 8 Ind. 104, 107 (1856) ("[Prescriptive easements] must have been enjoyed in the same degree—to the same extent—as claimed in the suit involving them."); Contel of Ind., Inc. v. Coulson, 659 N.E.2d 224, 229 (Ind. Ct. App. 1995) ("A prescriptive easement is limited to the purpose for which it is created and cannot be extended by implication."), *reh'g denied*, *trans. denied*; Heidersbach, 172 Ind. App. at 439, 360 N.E.2d at 618 ("All easements are limited to the purpose for which they were created, and their enjoyment cannot be extended by implication.").

---

[3] Only one of the easements at issue in this case was granted by deed ("the Hathaway deed"), the remaining 127 were acquired through prescription or condemnation. The Hathaway deed granted the easement "for the purpose of maintaining a line of rail way." Addendum to Pl.'s Br. at 4–6. As our analysis reveals, the scope of the easement granted by the Hathaway deed is effectively the same as those acquired through prescription and condemnation.

4

Likewise, railroad rights of way created by condemnation establish only easements that are necessarily limited to the purpose for which they are taken. Quick v. Taylor, 113 Ind. 540, 542–43, 16 N.E. 588, 589–90 (1888) ("The doctrine generally accepted is, that the right acquired by the power of eminent domain extends only to an easement in the land taken, unless the statute plainly provides for the acquisition of a larger interest."); *accord* Chi. & W. Mich. Ry. Co. v. Huncheon, 130 Ind. 529, 532–33, 30 N.E. 636, 637 (1892); Hoffman v. Zollman, 49 Ind. App. 664, 670 (1912); Cleveland, Cincinnati, Chi., and St. Louis Ry. Co. v. Doan, 47 Ind. App. 322, 325, 94 N.E. 598, 599 (1911); *see also* Meyer v. N. Ind. Pub. Serv. Co., 254 Ind. 112, 115, 258 N.E.2d 57, 58 (1970) ("Eminent domain is limited by the necessity of the take and the condemning authority may condemn only for future use which is fairly and reasonably needed."); Kessler v. City of Indianapolis, 199 Ind. 420, 426, 157 N.E. 547, 549 (1927) ("The purpose for which private property is condemned is the very basis of the right to condemn."). Thus, the purpose for which the property is acquired, either through prescription or condemnation, determines the scope of the easement, and the holder of the easement cannot impose a different or extra burden upon the landowner. Klotz, 558 N.E.2d at 1100 (quoting Heidersbach, 172 Ind. App. at 438, 360 N.E.2d at 618).

Applying the law to this case, we hold that a public trail is not within the scope of easements acquired for the purpose of operating a line of railway. The original interest obtained as against the landowners' predecessors in title was no greater than the purpose for which the easement was used at that time. Yarian, 219 Ind. at 482–83, 39 N.E.2d at 606. That purpose was the transportation of goods through the operation of a railroad line. The easement cannot now be recast for use as a public recreational trail without exceeding the scope of the easement and infringing the rights of the landowners.

The Government contends that Indiana applies a form of "shifting public use" doctrine and that this case calls for its application. Def.'s Br. at 23–25. Specifically, the Government asserts that our line of cases holding that the installation of utility or gas lines along railroad and highway easements generally does not constitute an additional burden should also permit the use of those easements as public recreational trails. *See, e.g.*, Fox v. Ohio Valley Gas Corp., 250 Ind. 111, 235 N.E.2d 168 (1968) (holding that the laying of a gas pipeline on a public highway

5

easement did not impose an additional burden on the abutting landowners). In fact, the Government contends that our precedent "allow[s] a wide diversity of activities along the [railroad] corridor," Def.'s Br. at 20, and that "a new use that is compatible with the original use . . . does not fall outside the scope of the easement." *Id.* at 23. We disagree.

As Fox makes clear, the focus remains on the *purpose* of the easement at the time of its acquisition. 250 Ind. at 117–18, 235 N.E.2d at 172 (citing with approval Yarian, 219 Ind. at 485, 39 N.E.2d at 607). Indiana has never recognized the "shifting public use" doctrine,[4] and we decline to do so here. The recognition that with the "advancement of commerce and new inventions, society must adjust itself from existing conditions to growing and changed conditions and specifically to new means of transportation," *id.*, is a reinforcement, not an alteration, of the principle that the scope of an easement is directly correlated to its purpose rather than a specific use. "A dedication of land for *highway purposes* when made is deemed to comprehend not only specific uses in the minds of the parties at the time, but also those developed and invented, which fall into the *category of transportation* in the future." *Id.* at 118, 235 N.E.2d 172–73 (emphasis added). That is, a new use that is compatible with the original *purpose* is within the scope of the easement, *see id.*, and "does not place an additional burden on the subservient land." Louisville & Ind. R.R. Co. v. Ind. Gas Co., 829 N.E.2d 7, 11–12 (Ind. 2005) (relying on Fox to hold that gas company was not required to compensate railroad for installation of gas pipes across railroad right-of-way). The transportation of gas or oil by pipe rather than by truck or train is a variation of use but not of purpose. *See, e.g.*, Fox, 250 Ind. at 118, 235 N.E.2d at 173 ("Industry has found it more feasible, for example, to move oil or gas through pipe lines in many instances, rather than by truck on the surface along highways."). Likewise, the transmittal of communications through telephone lines rather than via postal letter carried by train, truck, or wagon is merely an alternate means to accomplish the same purpose. *See, e.g.*, Magee v. Overshiner, 150 Ind. 127, 49 N.E. 951 (1898) (holding that the erection of telephone lines along a public road did not constitute an additional burden on the abutting landowners). Such a scenario is not presented by this case. The transformation of a line of railway to a public trail imputes a different purpose. The operation a railroad line is a commercial enterprise of transport. Whereas as public trail is an activity

---

[4] In fact, the phrase "shifting public use(s)" appears only a single time in Indiana case law. Lewellen, 682 N.E.2d at 783 n.6 (declining to address the viability of the doctrine in Indiana).

of "recreation, not transportation." Preseault v. United States, 100 F.3d 1525, 1554 (Fed. Cir. 1996). A public recreational trail is not within the scope of a railroad easement and does not constitute a permissible shifting public use.

The Government also asserts that if "railbanking and interim trail use fall outside the scope of railroad easements, [this Court] should then consider what the consequences of that finding would be under Indiana law." Def.'s Br. at 27. This question is not among the questions certified by the Court of Federal Claims.

### Conclusion

We hold that, under Indiana law, railbanking and interim trail use pursuant to the federal Trails Act are not within the scope of railroad easements and that railbanking and interim trail use do not constitute a permissible shifting public use.

Sullivan, Rucker, and David, JJ., concur.
Shepard, C.J., dissents, concluding that the contemplated railbanking and interim trail uses do fall within the scope of the easements presented.